Freed *et al. v.* Brown *et al.*

———————◆———————

FREED ET AL. *v.* BROWN ET AL.

REAL ESTATE.—*Action to Recover.—Pleading.—Insanity of Grantor.*—Under the issue, formed by a general denial of the allegations of a complaint in the ordinary statutory form, to recover real estate, where the plaintiff has proved himself to be the legal heir of a deceased former owner of such realty, who died intestate, and the defendant has introduced in evidence and claims title under a deed from such ancestor, it is competent for the plaintiff then to introduce evidence that such ancestor, at the time of the execution of such deed, was a person of unsound mind.

SAME.—*Evidence.*—To establish that the grantor was a person of unsound mind, at the time of the execution by him of a conveyance of his real estate, it is not necessary to show, that, at that time, he had been so found, in a proceeding for that purpose, and was then under guardianship.

SAME.—*Conveyance.*—The conveyance of a person of unsound mind, made before he has been so found in a proceeding therefor, is voidable, merely.

SAME.—*Statute Construed.— Words and Phrases.*—By the phrase, "a person of unsound mind," as used in the 11th section of the act of May 29th, 1852, "defining who are persons of unsound mind," etc., (2 R. S. 1876, p. 598) is meant only a person who has been so found in a proceeding for that purpose under such statute.

From the Lawrence Circuit Court.

*Wilson & Dunn, Voris & Dunn* and *Putnam & Friedley,* for appellants.

*Riley & Iseminger, N Crook* and *J. W. Tucker,* for appellees.

Howk, J.—The appellees, as plaintiffs, sued the appellants, as defendants, in the Orange circuit court, for the recovery of certain real estate, in Orange county, Indiana.

Appellees' complaint was in the usual form, in such cases, and appellants' answer was a general denial. There was a trial by jury, in the Orange circuit court, which resulted in a verdict for the defendants, the appellants in this case; and over the motion of the plaintiffs, now the appellees, for a new trial, and proper exceptions saved, the said Orange circuit court rendered judgment on the verdict.

The cause was then brought by the plaintiffs, now the appellees, on appeal, to this court, where the judgment of the Orange circuit court was reversed, and the cause was remanded to that court, with instructions to grant a new trial. That decision of this court is reported, under the title of *Brown* v. *Freed,* in 43 Ind. 253.

On the return of the cause from this court, to the Orange circuit court, on the application of the plaintiffs, now the appellees, the venue of the action was changed from the latter court, to the court below. There was no change made in either the pleadings or the issues. But a trial was had by a jury, in the court below, which resulted in a verdict for the appellees. And on written causes filed, the appellants moved the court below for a new trial, which motion was overruled by the court, and to this decision appellants excepted. And judgment was then rendered upon the verdict by the court below, from which this appeal is now prosecuted.

The appellants have assigned, in this court, five alleged errors,—the first four of which are improperly assigned, and are not available to the appellants, as here presented, for any purpose. The fifth alleged error is, that the court below erred in overruling appellants' motion for a new trial.

The causes assigned by appellants for a new trial, in their motion for that purpose, were as follows:

1st. The verdict was not sustained by sufficient evidence;

2d. The verdict was contrary to law;

3d. Error of the court below, in admitting, over appellants' objection, testimony for the purpose of proving the insanity of Jacob Nidiffer;

4th. Error of the court below, in suppressing questions and answers, twelve and nineteen, of Thomas Trimble's deposition;

5th. Error of the court below, in suppressing parts of the depositions of John Nidiffer and Hettie Nidiffer;

6th. Error of the court below, in giving instructions numbered from one to eleven, both inclusive;

7th. Error of said court, in giving instructions numbered three, four, five and six, asked for by appellees; and,

8th. Error of said court, in refusing to give instruction number three, asked for by appellants.

But two questions are discussed by the learned attorneys of the appellants, in their argument of this cause in this court, and we will confine ourselves to the consideration and decision of the questions discussed, regarding all other matters of objection as, at least impliedly, waived.

On the trial of the cause, the appellees first showed title to the land in controversy, in one Jacob Nidiffer, under a deed dated August 28th, 1839; and it was admitted by appellants that, before the commencement of this action, the said Jacob Nidiffer had died, intestate, and that the appellees were his only heirs at law.

To meet the case thus made by appellees, the appellants gave in evidence,

1st. A deed from Jacob Nidiffer to Solomon Nidiffer, dated March 8th, 1853;

2d. A deed, dated October 3d, 1855, from Solomon Nidiffer to Richard D. Walters;

3d. A deed, dated February 28th, 1865, from Richard D. Walters to Josephine Freed, wife of Thomas Freed, the appellants;

In and by each of which deeds, the land in controversy

was conveyed, in fee-simple, to the grantee named therein. And appellees admitted that each of the said grantees took possession of said land under his or her deed.

And the appellees then offered parol evidence, tending to prove, that, at the time the said Jacob Nidiffer executed the said deed conveying the said land to Solomon Nidiffer, the said Jacob Nidiffer was a person of unsound mind, and that this was known to said Solomon Nidiffer when he accepted said deed. To the admission of which evidence the appellants objected, "on the ground that the question of the sanity or insanity of said Jacob Nidiffer did not arise and could not be tried upon a complaint in the ordinary or statutory form, for the recovery of real estate." But the court below overruled the objection, and admitted the evidence, and to this decision the appellants excepted.

It will be observed that the gist of this objection is, that the sanity or insanity of the maker of a deed, at the time of its execution, is a question that does not arise, nor can it be tried, upon a complaint in the ordinary or statutory form for the recovery of real estate. It was not an objection to the character, quality or weight of the evidence offered; but the objection went directly to the admission of any evidence, of any character, quality or weight, upon the sanity or insanity of the maker of a deed, at the time of its execution, where, as in this case, the complaint in the action was in the ordinary or statutory form for the recovery of real estate. This is precisely the same objection, which the appellants successfully urged to the same evidence, on the former trial of this cause, in the Orange circuit court, and the evidence was then excluded. On the former appeal of this cause, to this court, BUSKIRK, J., thus stated the positions of the appellants, then the appellees, in support of their objection to the offered evidence:

"The positions assumed by counsel for appellees are, that the plaintiffs in their complaint claimed to be the

owners in fee and based their right of recovery upon the legal title; that the legal title was shown to be in the defendants; that a claim to recover the possession of real property can not be sustained by proof of an equitable title; and that where the legal title is vested in the defendant, the plaintiff can only recover upon an equitable title, by alleging in his complaint the facts showing the nature of his title." . *Brown* v. *Freed, supra,* on p. 254.

And after fully considering the objection to the offered evidence, and the positions of counsel in support of said objection, BUSKIRK, J., said, in conclusion,

"We think the court erred in excluding the evidence."

When, therefore, on the trial of this cause in the court below, the appellants made the same objection, couched in precisely the same language, to the same evidence, the court below, in conformity with the express decision of this court, in this cause, overruled the appellants' objection, and admitted the offered evidence.    In our opinion, the former decision of this court, on this point in this cause, was correct; and the court below committed no error in overruling appellants' objection and admitting the offered evidence.

The argument of appellants' attorneys, on the point now under consideration, is not very clear; but, if we understand correctly their position in this court, it is, that the only admissible evidence, to show that the maker of a deed, at the time of its execution, was of unsound mind, would be the record of a court of competent jurisdiction, showing that such maker was, at the time, under guardianship as a person of unsound mind.    This is an objection to the competency, only, of the offered evidence, to prove the insanity of the maker of the deed; while in the court below, the objection urged to the offered evidence was, that the question of the sanity or insanity of the maker of the deed did not arise and could not. be tried upon an ordinary or statutory complaint for the recovery of real estate.    But in our opinion appellants'

objection in this court, to the evidence admitted in the court below, is not any more tenable than the objection urged in the latter court and already considered. The evidence offered was both admissible and competent, and its weight was a question for the jury.

The other question discussed by the appellants' attorneys, in their brief of this cause, relates to the instructions of the court below to the jury, and this is a much graver question, and worthy of more careful consideration.

When this cause was before this court on a former occasion, in giving the opinion of the court, BUSKIRK, J., said:

" The question involved was, whether Jacob Nidiffer had made a valid conveyance of such lands during his life. The fact was not denied that he had made a conveyance, but the point in contestation was, whether such conveyance was valid and effectual to pass the title. If he was sane at the time of making such conveyance, the title passed. If he was insane, the deed was void and no title passed, but remained in him during life, and upon his death descended to and vested in the appellants,"— now the appellees. *Brown* v. *Freed, supra,* on p. 257.

With this enunciation of the law of this State in regard to the deed of an insane person, before the court below, it is not surprising that that court, upon the trial of this cause, should instruct the jury, in very decided terms, that if they should find from the evidence that Jacob Nidiffer, at the time of making his said deed to Solomon Nidiffer, was a person of unsound mind, then said deed was void and passed no title.

Appellants' counsel say, that " the objectional feature of these instructions is, that they inform the jury that the deed of a person of unsound mind is absolutely void." This is the only objection urged by appellants' attorneys, to the instructions of the court below; and they insist that where, as in this case, there had been no finding or

adjudication, in the proper court, of unsoundness of mind, against the maker of a deed at the time of its execution, such deed is not absolutely void, but is voidable merely. And, in support of their position, they cite the decision of this court in the case of *Musselman* v. *Cravens*, 47 Ind. 1.

In his opinion in the case last cited, in speaking of the former decision of this court in this cause, BUSKIRK, J., said:

"In *Brown* v. *Freed*, 43 Ind. 253, we inadvertently held the deed of an insane person, where there had been no office found, void, when it should have been held voidable merely, and on this point the opinion is modified."

It is very clear, we think, that the language used in *Brown* v. *Freed*, *supra*, was inadvertently used by the learned and usually careful Judge who wrote the opinion of the court. Strictly speaking, the question as to whether the deed in that case was absolutely void, or merely voidable, was not then before the court. The only question then before the court seems to have been, whether the sanity or insanity of the maker of a deed was a question that did arise, and could be tried, upon a complaint in the ordinary or statutory form for the recovery of real estate; and that question, as we have already said, was correctly decided in the affirmative. The question is now fairly presented to this court, for the first time in this case, whether the deed of Jacob Nidiffer to Solomon Nidiffer, conceding Jacob Nidiffer to have been, at the time of his execution of said deed, a person of unsound mind, was absolutely void, or merely voidable. We will briefly consider this question.

By the 2d section of the statute of this State, entitled "An act concerning real property and the alienation thereof," approved May 6th, 1852, it is provided as follows:

"Sec. 2. Persons of unsound mind and infants may

not alien lands nor any interest therein." 1. R. S. 1876, p. 361.

It will be seen from this provision, that persons of unsound mind and infants, so far as the mere right or power to convey lands is concerned, are classed together and clothed with the same disability. It has always been held, however, that the deed of an infant is not void, but merely voidable, and that, upon the removal of the disability, such deed may be either ratified or disaffirmed by the maker thereof. We know of no sound reason, either in principle or policy, why the same doctrine should not ordinarily apply to the deeds of persons of unsound mind, nor why such persons, upon the removal of their disability, should not have the same right or power, as infants have, to ratify or to disaffirm their deeds, made while under disability. On the contrary, there are many reasons, both of principle and policy, why the deeds and contracts of persons of unsound mind should not be held to be absolutely void, but merely voidable.

The broad and comprehensive meaning given by our law-making power to the phrase, "persons of unsound mind," is, of itself, a sufficient reason why the deeds and contracts of such persons should not ordinarily be held to be absolutely void, but merely voidable. It is provided by the 1st section of a statute of this State " defining who are persons of unsound mind," etc., approved May 29th 1852, as follows :

" The words ' persons of unsound mind,' as used in this act or any other statute of this State, shall be taken to mean any idiot, *non compos*, lunatic, monomaniac, or distracted person." 2 R. S. 1876, p. 598.

Monomania is defined to be " a derangement of a single faculty of the mind, or with regard to a particular subject only." Our own experience teaches us that there are and have been, in this age of the world, men of education, culture and extraordinary intellect, who have ably filled and gracefully adorned some of the highest and most im-

portant offices under our form of government, but who are or have been, in the strictest meaning of the word, undoubted monomaniacs. It would be absurd to say that the deeds or contracts of such men would be absolutely void. And yet we would be bound to hold that the deeds or contracts of such men were void, if we were limited to the literal meaning of the words used in the 11th section of the statute last referred to. This 11th section is in these words:

" Sec 11. Every contract, sale or conveyance of any person, while a person of unsound mind, shall be void." 2 R. S. 1876, p. 601.

It is very clear to our minds that these words were not intended, and ought not, to be construed according to their literal import. They must be construed with reference to the context or other sections of the statute of which they form a part. And therefore we hold, that by the phrase, " a person of unsound mind,' as used in this 11th section, is meant a person who has been duly found, in a proceeding in conformity with the 2d section of the same statute, to be a person of unsound mind and incapable of managing his own estate, and for whom a guardian has been appointed, as required by the 3d section of the same statute. Taken in connection with the other sections of the statute, this 11th section is to be construed as though it read in this wise, " Every contract, sale or conveyance of any person, made after such person has been found, in a proceeding under the 2d section of this statute, to be a person of unsound mind and incapable of managing his own estate, and while he is under guardianship, as required by the 3d section of this statute, and before it has been determined, in the mode prescribed by the 10th section of this statute, that such person has become of sound mind again, shall be void." But in our opinion the contract, sale or conveyance of any person of unsound mind, whose unsoundness of mind has not been judicially ascertained, and who is not under guar-

dianship, as provided for in this statute, is voidable merely and not void absolutely, and is subject to ratification or disaffirmance, upon the removal of the disability. This is the view taken by this court of this 11th section, nearly fifteen years ago, in the case of *Crouse* v. *Holman*, 19 Ind. 30. In that case, after quoting this 11th section, DAVISON, J., said:

" The section just recited is relied on by the appellant as settling the point under discussion. He contends, that under it the contract entered into by him, he being at the time of unsound mind, was absolutely void, and, in sequence, incapable of ratification. We are not inclined to adopt that conclusion. It is not pretended that Crouse, the defendant, had ever, under the provisions of the statute, been found to be ' a person of unsound mind,' and the result seems to be that that section does not strictly apply to the case at bar. Thus, it has been decided that ' The deed of a person, *non compos mentis*, under guardianship, is void; that the decree and letters of guardianship take from him all capacity to convey; but the deed of such person, not under guardianship, conveys a seizin, it being voidable only, and not void.' *Wait* v. *Maxwell*, 5 Pick. 217. In view of this decision, which seems to be correct, we deem the section above quoted as applicable alone to ' a person of unsound mind,' found to be so in the mode prescribed by the statute. At all events, the term ' void,' used in the section, when applied to the contract of a person *non compos*, not under guardianship, should not be taken in its precise technical sense, as contra-distinguished from ' voidable.' *Allis* v. *Billings*, 6 Met. 415. In that case it was held, that 'A deed, conveying land, by a person when of unsound mind, was voidable only, and not void.' "

We think this is a true exposition of the law of this State on the subject now under consideration, and we certainly have no disposition to hold otherwise. There was no evidence before the court below, in this case, that

Jacob Nidiffer had ever, under the provisions of the statute, been found to be "a person of unsound mind," or that, as such person, he was ever under guardianship. His deed to Solomon Nidiffer was therefore voidable, merely, and not void, and the court below should have so instructed the jury.

In our opinion, the court below erred in its instructions to the jury, and, for this error of law, the appellants' motion for a new trial should have been sustained.

The judgment of the court below is reversed, at the appellees' costs, and the cause remanded, with instructions to grant a new trial.

Petition for a rehearing overruled.