RICHARD B. ODOM and CORINNE B. ODOM v. NATHANIEL J. RIDDICK.

*Insanity—Idiots and Lunatics—Notice—Purchaser for Value— Evidence—Burden of Proof—Fraud—Void and Voidable Conveyances.*

1. The law presumes that all persons are sane, and the burden is upon him who alleges insanity, in avoidance of any act, to establish that fact.

2. A purchaser from one who, in fact, is without mental capacity to contract, for value, and without notice of the disability, or of facts which might reasonably put him upon inquiry, will be protected.

3. A purchaser for value, and without notice, from one who had acquired by fraudulent devices a conveyance, regular and sufficient upon its face to pass the title, obtains a good title, though it might have been adjudged void as against his vendor.

4. Even where the purchaser has knowledge of the mental incapacity of the vendor, but it is shown that no fraud was practiced, or undue influence exercised, and that the price paid was a full and fair one, and the vendor was benefitted by the transaction, the conveyance will, ordinarily, not be set aside—certainly not without restoring the parties to the positions they occupied before entering into the contract.

This is a CIVIL ACTION for the recovery of the possession of the land described in the complaint, and for damages for its unlawful detention, tried before *MacRae, J.,* upon issues found by a jury and exceptions to a referee's report, at Fall Term, 1888, of GATES Superior Court.

Prior to the 21st day of February, 1866, Oliver Odom was seized in fee-simple of the land in controversy, known as the " Walton Place," containing about five hundred acres and situate in Gates County.

On the 21st February, 1866, Oliver, by his conveyance, in proper form, and reciting a valuable consideration, conveyed the land to his brother Richard B. Odom, who

in 1869, conveyed to Mills Roberts, and the latter subsequently conveyed to the defendants.

Oliver Odom died, intestate, in the year 188–, leaving the plaintiffs his only heirs at law, who prosecute this action, alleging that their ancestor was at the time he executed the conveyance to his brother, in February 1866, and for a long time theretofore and continuously thereafter until his death in the Asylum for the Insane at Raleigh, "utterly insane and incapable to make a deed or other contract which would in any way affect his estate," and that his deed to his brother Richard was without any consideration whatever.

The defendants denied the allegations' of the plaintiffs, except that one in which they were described as the heirs of Oliver—and further alleged that, "even if the said Oliver was of non-sane mind on the 21st February, 1866, yet the said deed ought not to be avoided by the Court, because it was to the manifest benefit of his estate. It was made to his only brother, who thereafter supported the said Oliver and his family on and out of the proceeds of the land, and with the advice and assistance of counsel learned in the law, who had for many years been his adviser and business agent, and upon full consideration; and because defendants, and those under whom they claimed, other than the said Richard, purchased in good faith, for a full and fair price, and without knowledge of the alleged insanity of the said Oliver at the time of the execution of the deed of 21st February, 1866."

The issue of insanity was submitted to a jury as follows: "Was Oliver H. Odom, at the time of executing the deed of February 21, 1866, of sufficient mental capacity to make the same?" Answer, "No."

Thereupon the case was referred by consent of all parties to David A. Barnes, with power, sitting as chancellor, to decide upon the facts and all matters of law and equity arising upon the pleadings and testimony, with liberty to

either party to except to the referee's rulings on such matters of law and equity, and appeal therefrom. Thereupon the referee heard the case and made the following report:

" After hearing the testimony, which is herewith reported, and the argument of counsel, I find the following facts and conclusions of law:

" 1. No fraud was practiced upon Oliver Odom, or undue influence exercised to induce him to make the deed to his brother R. B. Odom. He acted upon the advice of Jas. W. Roberts, Esq., who had been his attorney for years, who was well acquainted with his affairs, and who knew the amount of his indebtedness to his brother Richard.

" 2. Oliver Odom, at the time he made the deed in question to Richard, owed said Richard the full consideration expressed in said deed.

" 3. The price paid was a full and fair consideration for said land.

" 4. Richard Odom was aware of the mental weakness of his brother.

" 5. Olive Odom was then insolvent.

" 6. Oliver Odom was benefitted by the making of the deed to Richard, as himself and family thereby received a home and support for ten years, together with the services and protecting care of Richard, who remained there and devoted his time and attention mainly to them. Judgments due creditors amounting to more than one thousand dollars were paid off, principally from the proceeds of the farm, while under the management of Richard.

" 7. Neither Mills Roberts or either of the defendants knew that Oliver Odom, when he made the deed to Richard, had not sufficient capacity to make said deed.

" 8. Richard Odom, when he made the deed to Mills Roberts, owed him thirteen hundred dollars, and at Roberts' death still owed said debt.

" 9. The defendants were innocent purchasers and paid a fair value for the portions of the land which they respectively purchased.

" 10. On the 20th day of March, 1876, by an order of the Superior Court of Gates County, upon an *exparte* petition of the heirs of Mills Roberts, R. B. Odom *et al.*, the land in question, except the portion purchased by the defendant Briscoe, was sold at public auction; that portion occupied by defendant Brown was purchased by him for three hundred and eleven dollars; that part of the home place now occupied by the defendant Riddick was purchased by R. M. Riddick and James T. Walton for one thousand five hundred and ten dollars, who afterwards conveyed to defendant Riddick for the consideration of one thousand eight hundred dollars. R. B. Odom and heirs of Mills Roberts had previously conveyed to defendant Briscoe the portion of the land occupied by him for the consideration of three hundred and fifty dollars.

" 11. The portion of the land occupied by the defendant Riddick has been enhanced in value by reason of improvements seven hundred and fifty dollars, and the rents thereof for the past twelve years aggregate in value the sum of eighteen hundred dollars.

" The portion of the land occupied by the defendant Briscoe has been enhanced in value by reason of improvements six hundred and fifty dollars, and the rents thereof for the past twelve years aggregate in value five hundred dollars.

" The portion of the land occupied by the defendant Brown has been enhanced in value by reason of improvements six hundred and eighty-nine dollars, and the rents thereof for the past twelve years aggregate the sum of three hundred and fifty-five dollars."

Upon this state of facts I find the following conclusions of law :

ODOM *v.* RIDDICK.

" 1. The deed from Oliver Odom to Richard B. Odom is not absolutely void, but only voidable that it was avoidable to pass an estate to said Richard, and is valid until, by action of the grantor or his heirs, the same is avoided.

" 2. That the deed from Oliver Odom to Richard B. Odom of the 21st February, 1866, be avoided and declared void upon condition that the plaintiffs, within six months, pay to the defendants the amount of their purchase money and interest, and the enhanced value of the lands caused by their improvements, less the rents during their occupancy.

" 3. That the defendants Riddick, Briscoe and Brown are entitled to receive from the plaintiffs the following amounts as a condition upon which the deed from Oliver Odom to Richard B. Odom is to be avoided, namely : To N. J. Riddick, one thousand five hundred and forty-seven dollars and twenty cents ($1,547.20); Eastan Briscoe, seven hundred and forty dollars ($740), and W. H. Brown, eight hundred and sixty-five dollars ($865), each of said sums to bear interest from Spring Term, 1888, of Gates Superior Court, until paid."

Exceptions were filed by the plaintiffs and defendants to the report, but after argument it was adopted by the Court and judgment rendered in accordance therewith, from which both parties appealed.

*Mr. L. L. Smith,* for the plaintiffs.
*Mr. R. H. Battle,* for the defendants.

CLARK, J.: The reference was by consent. By its terms the referee was vested " with power, sitting as a chancellor, to decide upon the facts and all matters of law and equity arising upon the pleadings and testimony, with liberty to either party to except as to the referee's rulings on such matters of law and equity, and to appeal therefrom." The parties reserved the right to except only to the referee's rulings

.as to the law. By any reasonable construction, his findings of fact were to be conclusive. He found as a fact that the defendants purchased the land for value, and without notice of any mental incapacity on the part of Oliver Odom. Had the defendants purchased directly from Oliver Odom, for value, and without notice of his mental incapacity to make a deed, a Court of Equity would not, ordinarily, set aside the deed. *Riggan* v. *Green*, 80 N. C., 236.

We do not see that the condition of the defendants is any worse because they bought mediately and not immediately. The presumption of law is in favor of sanity, and this presumption is so strong that, when a want of it is claimed, even in a capital case, the burden is on the defendant to prove it, the presumption of sanity being stronger than the presumption of innocence. When, therefore, a purchaser sees a regular chain of title, formal in all particulars, upon the registration books, executed by grantors of full age and not *feme coverts*, he has a right to rely upon the presumption of sanity; and if, without any notice, or matter to put him upon inquiry, and, for fair value, he takes a deed, he should be protected. Any other doctrine would place all titles upon the hazard.

If the title of an innocent purchaser for value, without notice, can be upset for the alleged mental incapacity of one grantor, it can be done, though the grantor may have been a very remote one. The evidence must necessarily be sought among those friendly to the heirs of such grantor—the neighbors and acquaintances of the party of alleged incapacity—and it would be difficult for the grantee in possession to furnish proof of the sanity of every grantor through whom he claims. Every man who shows the abnormal condition of mind which incapacitates him to make a conveyance of his property is sure to attract the attention of those around him who have the power, and sometimes exercise it, to conceal the fact. It is a safer rule to require his heirs, or those act-

ing for them, to take prompt steps to have the deed set aside and parties placed *in statu quo* before the property is conveyed to other parties and while the facts are capable of full investigation, than to subject a remote grantee to maintain the integrity of his title by rebutting allegations of incapacity in any one of a long line of grantors.

A purchaser for value from one whose deed is declared by the jury to be fraudulent and void gets a good title if he has no notice of the fraud in his vendor's deed. *Young* v. *Lathrop*, 67 N. C., 63; *Wade* v. *Saunders*, 70 N. C., 270; *Davis* v. *Council*, 92 N. C., 725; *Perry* v. *Jackson*, 88 N. C., 103.

The fact that it is found here that the defendants' grantor obtained the deed, without fraud or undue influence, for a full and fair price, and, acting under advice of Oliver Odom's counsel, who had been his attorney for years, surely cannot be allowed to put the defendants in a worse plight than they would have been placed if their grantor had procured the conveyance by fraud and undue influence.

The great teachers of English law say that persons of non-sane memory, &c., " are not totally disabled to convey or purchase but only *sub modo*. Their conveyances are voidable but not void." 2 Black Com., 291, and 2 Kent Com., 451. The deed of a person of unsound mind, not under guardianship, *conveys the seisin*. *Wait* v. *Maxwell*, 5 Peck, 217; *Crouse* v. *Holman*, 9 Ired., 30, and cases cited. Story Eq. Juris, § 227, says: " The ground upon which Courts of Equity now interfere to set aside the contracts and other acts, however solemn, of persons who are idiots, lunatics and otherwise *non compos mentis*, is fraud. Such persons being incapable in point of capacity to enter into any valid contract, or to do any valid act, every person dealing with them, knowing their incapacity, is deemed to perpetrate a meditated fraud upon them and their rights." To same purport Adams' Eq., 183, and cases cited. This places the doctrine upon an intelligible basis, and delivers the Courts from the

evident injustice and insurmountable inconvenience of declaring that all contracts made with one apparently sane, but who proves to have been insane, void *ab initio* for want of a consenting mind. This doctrine would give a lunatic or his heirs restoration of property sold by him without return of the money received for it, as was actually held in *Gibson* v. *Soper*, 6 Gray, 729, and *Rogers* v. *Walker*, 6 Penn. St., 371. The correct rule is stated by Mr. Story in sec. 228 : " If a purchase is made in good faith, without any knowledge of the incapacity, and no advantage had been taken of the party, courts of equity will not interfere to set aside the contract, if injustice will be done to the other side and the parties cannot be placed *in statu quo*." Buswell on Insanity, sec. 413, says: " A completed contract for the sale of land made by an insane vendor, without fraud, or notice to the vendee of the grantor's insanity, and for a fair consideration, will not be set aside, either at law or in equity, in favor of the vendor or his representatives, except the purchase money be restored and the parties fully reinstated in the condition in which they were prior to the purchase. This rule appears to be unquestioned in the English Courts."

To the same effect is the able opinion of HORTON, C. J., in *Gibbon* v. *Maxwell*, 34 Kan., 8, decided in 1885, in which numerous authorities are reviewed and commented upon, and also *Behrens* v. *McKenzie*, 23 Iowa, 333, in which the opinion is delivered by a very eminent Judge (Dillon) and *Corbit* v. *Smith*, 7 Iowa, 60 ; *Allen* v. *Berryhill*, 27 Iowa, 534 ; 2 Pom. Eq. Juris, sec. 946—see also. *Scanlan* v. *Cobb*, 85 Ill., 296 ; *Young* v. *Stevens*, 48 N. H., 133 ; *Eaton* v. *Eaton*, 8 Vroom, 103 ; *Freed* v. *Brown*, 55 Ind., 310 ; *Carr* v. *Halliday*, 5 Ired. Eq., 167. In *Bank* v. *Moore*, 78 Pa. St., 407, a lunatic was held liable upon a note discounted him by the bank, and PAXTON, J., says: " It would be an unreasonable and unjust rule that such persons should be allowed to obtain the property of innocent parties and retain both the prop-

erty and the price. Here the bank in good faith loaned the defendant money on his note. The contract was executed, so far as the consideration is concerned, and it would be alike derogatory to sound law and good morals that he should be allowed to retain it to swell the corpus of his estate." To same purport is *Person* v. *Warren*, 14 Barb., 488; *Allis* v. *Billings*, 6 Met., 415. The Courts have gone further, and held that when the contract is fair and *bona fide*, executed and completed, and the parties cannot be again put in *statu quo*, and there was no notice of mental incapacity, the Court will not set aside the contract at all. *Molton* v. *Camroux*, 2 Exch., 487, affirmed on appeal, 4 Exch., 17; *Cruger* v. *Skinner*, 1 McCarter, 389; *Neil* v. *Morley*, 9 Ves., 478. Also Lord Chancellor Truro in *Price* v. *Berrington*, 3 M. and G., 498 and Lord Cranworth in *Elliott* v. *Ince*, 7 DeG. M. and G., 474.

It is clear from these authorities that the conveyances of an insane person, not previously declared insane, are voidable merely and not void; that the right to set them aside is based upon the ground of fraud, and that the Court will not usually interfere unless there has been fraud, or a knowledge of the insanity by the other party, and will then place the parties *in statu quo*. When, therefore, as in this case, the grantee knew of the mental incapacity of the grantor, but it is found, as a fact, "that no fraud was practiced upon Oliver Odom, or undue influence exercised to induce him to make the deed; that he acted under the advice of his lawyer, who had been his counsel for years; that the price paid was a full and fair consideration for the land, and that the grantor was benefitted by the making of the deed, as he and his family thereby received a home and support;" it would seem that a Court of Equity would not set aside such conveyances, even as between the parties thereto, and certainly not without restoring the *status quo ante*. *Selby* v. *Jackson*, 6 Beavan, 192.

"Courts of Equity ever watch with a jealous care every contract made with persons *non compos. mentis*, and always interfere to set aside their contracts, however solemn, in all cases of fraud, or when the contract, or act, is not seen to be just in itself, *or for the benefit of such persons.*" *Riggan* v. *Green*, 80 N. C., 239.

The deed to Richard Odom passed the legal title, and was voidable by Oliver Odom, or his heirs only, upon the ground of fraud, in taking title from one whom the grantee knew to be mentally incapacitated. The property has been conveyed for a fair value to innocent parties who took without notice. It has been held in the leading English case of *Greenslade* v. *Dare*, 20 Beavan, 234, by the Master of the Rolls (since Lord Romilly), that if a conveyance is made by an alleged lunatic under undue influence, and for an inadequate consideration, a purchaser from such grantee for a valuable consideration, and without notice, would be protected, as any other purchaser, for value and without notice, from a fraudulent alienee. The Court instances the insecurity of purchasers if any other doctrine should be laid down. The case of *Ashcroft* v. *DeArmond*, 44 Iowa, 229, is not exactly in point, but illustrates the proposition that deeds from an undeclared lunatic are voidable on the doctrine of fraud. It holds that where the grantee of a lunatic took for value, and without notice, a subsequent purchaser from such innocent grantee for value, though with notice of the original grantor's, incapacity, would not be affected, and cites the well established doctrine laid down in Kerr on Fraud and Mistake, 316, and cases there quoted. Indeed, the facts in *Riggan* v. *Green*, *supra*, are almost identical with those in this case in every particular, and that case should be conclusive of this.

As to exception sixth of the plaintiff, it is sufficient to say: 1. Roxana B. Odom is not a party to this action; her rights, if any, are not set up in the complaint, and the

plaintiffs claim under their father, and not under her. 2. The deed from Oliver to Richard Odom was executed February 21, 1866, two years and a half before the married women's rights were enlarged by the Constitution of 1868, and more than a year before the act was passed restoring to married women the common law right of dower, March 2, 1867. There was no necessity then for a wife to join her husband to convey his land. *Sutton* v. *Askew,* 66 N. C., 187; see, also, *The Code,* § 2115.

Our conclusion therefore is, that, upon the facts found, judgment should have been entered for the defendants. This disposes of both appeals.

In the plaintiff's appeal, no error. In the defendant's appeal, error.