## UNITED STATES v. BLANTON et al.

## In re RAY et al.

(District Court, E. D. North Carolina. December 9, 1920.)

### No. 812.

**Courts ⊂═⊃489 (12), 494—Irregular proceedings outside condemnation suit may be set aside.**

Pending a suit in the federal court by the United States to condemn land for a military camp a representative of the government obtained a contract from a widow for the sale of a tract of the land owned by the estate of her deceased husband and through proceedings instituted by him in her name he secured his appointment as commissioner to convey the land, including the interests of the minor children, to the United States, which he did, receiving the agreed price, which he paid into court. Shortly after a guardian was appointed for the widow by the state court on a petition alleging her mental incapacity, and he filed a petition to set aside the order authorizing sale of the land, which proceeding was removed by the United States into the federal court. *Held*, that the condemnation suit vested that court with jurisdiction over all the parties; that, as the mental capacity of the widow when she signed the agreement was subject to doubt, and the price agreed on was materially less than the value fixed by appraisers, of which she was not informed, and as the proceedings in the state court were not in conformity with the state statutes, and the money was still undistributed, that court's order would be set aside leaving the land to be acquired in the condemnation suit.

Condemnation suit by the United States against Vance Blanton and others. In the matter of petition on behalf of Flora Viola Ray and others. Relief granted.

Thomas D. Warren, Sp. U. S. Atty., of Newbern, N. C.
Rose & Rose, of Fayetteville, N. C., for defendants.

CONNOR, District Judge. On the 23d day of June, 1919, the United States filed a petition in this court against Vance Blanton and a large number of other landowners, residing in Cumberland and Hoke counties, N. C., for the purpose of securing, by condemnation, pursuant to the act of Congress of July 2, 1917, as amended April 11, 1918 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 6911a), title to a large area in said counties as a military camp, which will appear by reference to the original petition and proceedings thereon in the clerk's office. Process was duly issued and served on the defendants, Flora Viola Ray and her infant children, residents of Fayetteville, N. C. See Petition, p. 14.

Defendant Flora Viola Ray was entitled to a dower, which had not been allotted, and her children, defendants Stella Ray, Frances Ray, and Vontrice Ray, infants, were entitled, subject to their mother's dower, to the tract of land lying and being in Hoke county, within the Camp Bragg area represented in the plat filed with said petition as tract No. 301, containing 384.4 acres.

On May 5 and 6, 1920, "at the request of the officials of the govern-

⊂═⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
270 F.—21

ment," J. H. Smith, B. R. Gatlin, and A. B. McFayden, citizens of Hoke county, made—

"an estimate of the lands belonging to Mrs. Flora Viola Ray, widow, and the minor children of D. J. Ray, deceased; * * * that said commissioners valued the property at that time as follows: Dwelling, $250; kitchen, $100; barn, $125; crib, $75; smokehouse, $25; fowl house, $25; 30 acres timber, $750; 327 acres of woodland, $4,578—total $7,428."

See Exhibits A, B, and C.

On June 19, 1920, J. C. MacRae, Esq., then—

"employed by the Real Estate Service of the War Department as a real estate expert, in connection with the acquisition of lands in the Camp Bragg area in Cumberland and Hoke counties, was requested by Mr. W. H. McDonald, field representative of the Real Estate Service of the War Department, with offices at Fayetteville, N. C., and in charge of the acquisition of lands in the Camp Bragg area, to call on Mrs. Flora Viola Ray in Durham, N. C., and see if she would sign a contract or proposal to sell the lands described in the petition or motion in this cause to the United States for the sum of $5,736 ($15 per acre). Mr. McDonald stated that this sum was the highest price the real estate service would approve for payment for said lands."

Acting upon the said request, Mr. MacRae—

"went to Durham on June 19, 1920, at the expense of the government, and called on Mrs. Flora Viola Ray, at her home on Arnett avenue, where he found her dressed, but lying down. She got up and sat in a chair in the presence of her daughter, Miss Stella Ray, age 20 years. He stated to Mrs. Ray that he called upon her at the instance of the government for the purpose of ascertaining if she would sell the lands owned by her deceased husband, D. J. Ray, for the sum of $5,736—that is, $15 per acre. He told her that this price was more per acre than that paid by the government for any lands adjoining her lands, which is a fact; the said prices for the adjoining lands ranging from $6 per acre to $13 per acre. He also told her that this price was more than twice the amount of the first appraisal of her land, but that Mr. McDonald felt that the first appraisal was not sufficient, though it had been made by disinterested citizens of Hoke county. He explained carefully to Mrs. Ray and her daughter, Miss Stella Ray, that she did not have to sell her lands to the government at the price of $5,736, inasmuch as the lands were included in the condemnation proceedings instituted by the government, and that she could await the findings of the commissioners appointed by the federal court as to the amount to be paid for the lands." Exhibit 1, Mr. MacRae's affidavit.

It does not appear that Mr. MacRae told Mrs. Ray that the three citizens selected by the government to appraise her lands May 5, 1920, had reported their value to be $7,428.

It appears that about the 21st day of November, 1918, J. W. Johnson and W. T. Covington, together with J. Hector Smith, "visited and viewed the lands of Mrs. Ray, and, after due examination and consideration of the character, location, and condition of said lands, they formed the opinion that a fair cash market value of the said lands was $6.50 per acre." This was the appraisal to which Mr. MacRae referred in his conversation with Mrs. Ray. See Exhibit D. She said the price was satisfactory to her and asked her daughter, Miss Stella Ray, what she should do, and her daughter replied, "Do whatever you want to." Mr. MacRae asked her if she would sign the contract or proposal to sell to the government for $5,736, and she replied that she would, but stated that she was nervous and asked him to sign her

name for her. He suggested that it would be better for her daughter to sign her name, whereupon Miss Stella Ray signed her mother's name, at her mother's request, and in her mother's presence, and witnessed the signature by signing her own name to the paper. He then witnessed it. Exhibit 1.

While not very important, it appears from an examination of the original contract, in the record, that Mr. MacRae wrote the words "D. J. Ray Est.," and Miss Stella Ray wrote thereunder the words "Viola Ray." Exhibit 2. Whether by this manner of executing the paper it became the "act and deed" of Flora Ray may admit of debate. It is, however, not material to the disposition of this motion. It is manifest that Mr. MacRae did not consider the manner in which the paper was signed as material to the final act in passing title to the land, nor was it so.

Mr. MacRae told Mrs. Ray that it would be necessary to pass the title of her children to file a petition in the superior court, and that she would have to secure the services of a lawyer; that, her children being minors, the sale could be completed only by an order of court. She understood this and asked him to suggest the name of a lawyer. He named several lawyers residing in Fayetteville. Knowing, as she did, that Mr. MacRae was a lawyer practicing his profession in Fayetteville, she asked him if he could not attend to the case for her children and herself. He said that he could do so at the same cost as any other reputable lawyer. She requested him to file the petition, and, as it in no way conflicted with his relations with the Real Estate Service of the War Department, the contract or proposal to sell having already been executed by Mrs. Ray, he consented to do so. Returning to Fayetteville, he drew the petition addressed to the clerk of the superior court of Hoke county, having jurisdiction in the premises, and returned to Durham on June 22, 1920, where he again saw Mrs. Ray, read the petition to her, and requested R. C. Cox, a notary public, to take her affidavit thereto. The verification is signed: "Flora Viola X Ray."
                    her
                    mark

Mr. MacRae suggested to Mr. McDonald that the government should pay a part of the cost of obtaining the order, and he consented to add $75, making $5,811. It is entitled "In the Matter of Flora Viola Ray and Stella Ray and Annie Ray and Vontrice Ray, by Their Next Friend, C. W. Broadfoot." Exhibit 1.

On April 21, 1920, application was filed by C. W. Broadfoot to the clerk of the superior court of Hoke county, setting forth that "the children of Mrs. Ray are infants without any general guardian; that they each own one undivided interest in the lands described; that said lands are in the Camp Bragg area, and, as appears on the map made by the supervising engineer, are "tract No. 301; * * * that it is desirable that there shall be a sale of said property, and that it is necessary that there be an action or special proceeding at law for that purpose; that the persons closely connected with said infants are interested in the result of said action or special proceeding, and the undersigned, for that reason, has been requested to apply for appoint-

ment as next friend of said infants; that the undersigned has no interest whatever (neither present nor prospective) in the result of said action or special proceeding, except to see that the rights of said infants are protected in the event of his. appointment, as their next friend.".

The order appointing Mr. Broadfoot, who resides in Fayetteville, N. C., is dated "30th day of June, 1920," and the acceptance of said appointment filed by him bears the same date. It will be observed that the application for appointment as next friend makes no reference to any contract or proposal to sell. The date shows that it was filed nearly two months before the contract or proposal to sell was made by Mrs. Ray.

It does not appear why Mr. Broadfoot filed this application, or by whom he was requested to do so. On the same day the order of sale was made affidavits were filed by J. H. Smith, A. B. McFayden, and B. R. Gatlin, in which they "express the opinion that $5,811 is a fair and adequate sum for the sale of the land, and that the same is advantageously sold at such sum."

The petition (paragraph 5) states that "an appraisal of the land had been made by J. H. Smith, A. B. McFayden, and B. R. Gatlin, and the value found to be $5,811," whereas their affidavits were not made until June 30, 1920.

Pursuant to the order of the clerk, approved by the judge of the district, Jas. C. MacRae, as commissioner, executed a deed to the United States for the lands and received from the officers of the government the purchase money therefor. The clerk of the superior court, in the order directing the sale, also ordered the commissioner, "after deducting for his commission the sum of $200, the cost of the proceeding, including cost of the premium on the title guaranty policy, to pay to Flora Viola Ray the present cash value of her dower interest in the lands, and pay the balance due the infant petitioners into the court to await the further orders of the court."

On the 30th day of August, 1920, H. C. McLauchlin applied to the clerk of the superior court of Cumberland county, being the domicile of Mrs. Ray and her children, for letters of guardianship, alleging that Mrs. Flora Viola Ray was non compos mentis, and that she and her infant children were without any general guardian. No inquisition respecting the mental condition of Mrs. Ray was had by the clerk, but on the same day he appointed, and upon the execution of a bond with security in the penal sum of $400 issued letters of guardianship to, said H. C. McLauchlin, in accordance with his application.

On the 1st day of September, 1920, H. C. McLauchlin, as guardian of his said wards, filed a petition in the cause pending in the superior court of Hoke county, in which he averred that, at the time the petition for the sale of her lands were filed, his ward Flora Viola Ray was non compos mentis; that the said lands were at the time of filing said petition worth $40 to $50 per acre; that the order of sale entered in said proceeding was "contrary to the course and practice of the court of this state in such cases." He set forth other grounds as the basis of his motion to vacate and set aside the orders and decrees made there-

in asking that the deed made by the commissioner be revoked and canceled.

Upon filing the petition, notice having issued to the representatives of the United States, Thos. D. Warren, Special Assistant United States Attorney, came into the court and entered a special appearance for the purpose of moving that the petition of H. C. McLauchlin, guardian, be dismissed, for that the United States of America is the owner of the land in controversy, and is not a party to this proceeding, and that the court was without jurisdiction to set aside or revoke the orders heretofore entered, or to cancel the deed made by the commissioner.

He further moved the court to transfer all proceedings in the cause into the District Court of the United States for the Eastern District of North Carolina, at Raleigh, N. C., for the reason that there is now pending therein condemnation proceedings in which petition was filed June 23, 1919, by the United States asking for condemnation of certain lands in Cumberland and Hoke counties for an artillery range, and that the lands described in said proceedings are lands formerly owned by Flora Viola Ray and others, and are embraced within the boundaries of this petition, and the said Viola Ray and others are parties to this proceeding, and this court has no jurisdiction to make further orders and decrees affecting the title of the United States, but that same should be determined in the condemnation proceedings now pending in the District Court of the United States.

Upon filing the foregoing motion and after notice to Jas. C. MacRae, commissioner, and Chas. W. Broadfoot, the next friend of the infant petitioners, the clerk of the superior court of Hoke county on September 16, 1920, ordered that the cause and all proceedings therein be transferred to this court. Pursuant to said order, the records, orders, and other papers in the cause were duly transmitted to this court for further hearing and determination.

While the course pursued in this case results in a procedure of first impression, counsel for the United States and the other parties interested waive all technical objections to the procedure and desire the court to dispose of the controversy. It is conceded that, under the act of Congress, the government is entitled to secure the title to and possession of the lands for the purpose of establishing and maintaining an artillery training camp. It is equally clear that the defendants are entitled to receive from the government the fair cash value of their lands, and when this is fixed and paid the government is entitled to have a good and valid title thereto. This result can be reached only by an adjudication upon the validity of the proceedings instituted in the superior court of Hoke county, upon which the validity of the deed executed by Jas. C. MacRae, commissioner, is dependent. It is to be regretted that those representing the government, after instituting the condemnation proceeding and bringing the parties into the court, saw fit to endeavor to secure title to the lands in controversy by other methods. The course pursued has resulted in confusion and uncertainty.

As the purchase money paid by the government for such title as was secured by the orders and decrees in the special proceeding is in

the possession of the clerk of the superior court of Hoke county, and as no final decree fixing the amount to be paid Mrs. Ray for the present value of her dower right and the amount due each of the infant petitioners has been passed, the case is open for such motions, orders, and decrees as may be necessary to conclude the rights of all parties.

This court, having taken jurisdiction of the parties and the subject-matter before the special proceeding was instituted, is the appropriate tribunal to pass upon all questions respecting the title to the lands; all persons interested therein being in the record.

Passing the question of jurisdiction and procedure, in respect to which no controversy is made, we proceed to examine the objections raised by the guardian of Mrs. Ray and her infant children, to the proceeding in the superior court of Hoke county and the orders and decrees made therein by which the United States claims to have acquired title to the lands of his wards.

He alleges that Mrs. Flora Viola Ray, at the time she signed the contract or proposal to sell the land, and at which the proceeding to sell her children's interest therein was instituted, had not sufficient mental capacity to understand the nature and terms of the contract or its effect upon her rights. This is denied by the government and by Mr. MacRae, who conducted the negotiation and secured the execution of the contract, filed the petition, and conducted the proceeding. It is also denied by Mr. Broadfoot, who acted as the next friend of the infant petitioners. Conceding, as should be done, that Mr. MacRae did not know or suspect that Mrs. Ray was mentally incapable of entering into the contract, the evidence introduced before me strongly tends to sustain the averment of her guardian. No inquisition of lunacy having been taken by the court upon the application for letters of guardianship, the appointment of a guardian having been made upon the application of Mr. McLauchlin, such appointment carries no other weight in regard to the state of her mind than the sworn statement of the guardian. While the appointment of the guardian may not be attacked collaterally, it is manifest that the clerk making the appointment failed to give the notice of the applicant and make the inquiry respecting the mental condition of Mrs. Ray for which the statute provides. Rev. 1905, §§ 1772 and 1890; Sims v. Sims, 121 N. C. 297, 28 S. E. 407, 40 L. R. A. 737, 61 Am. St. Rep. 665. The finding upon inquisition of mental capacity is not conclusive upon persons dealing with alleged non compos mentis. Parker v. Davis, 53 N. C. 461.

The guardian has filed the affidavit of Dr. N. P. Boddie, of Durham, N. C., who states that he attended Mrs. Ray, as her physician at various times during the month of February, 1920, and thereafter he paid her occasional visits until the latter part of July, 1920, and that, while he has never made a full and complete examination of her mental state, he is of the opinion that at no time while she was under his charge was she able or competent to pass upon land values or any other business or legal affairs, and that she could not comprehend the effect of signing papers relating thereto. Exhibit E.

Dr. D. G. McKethan states that he is a practicing physician residing in Fayetteville, N. C., and that as her physician he has attended Mrs.

Ray and is well acquainted with her mental and physical condition; that, after a thorough examination, he is of the opinion that she has not sufficient mental capacity to understand any legal document, and from the history of her case he is of the opinion that she has been in such condition for several months; that he regards her as a person who is non compos mentis; that he does not regard her as competent to understand the effect of the contract which she signed for the sale of her lands. Exhibit F.

R. H. Ray, a brother of Mrs. Ray, testifies that she was sick for several weeks during the latter part of the year 1919, with influenza, and that after Christmas of that year following this attack she has been subject to epileptic fits; that he has seen her several times during the month of May, 1920; that he visited her in Durham for the purpose of bringing her home; that she was sick, confined to her bed; that he has talked with her during said period, and is of the opinion that she was not able to understand the effect of signing a paper with reference to her land in Hoke county. Exhibit G. Mrs. Baughman, the sister of Mrs. Ray, was examined orally before me and testified to her mental and physical condition to the same effect as the affidavit of her brother.

Counsel for the United States introduced the affidavit of Neil D. Black, who states that he is the brother-in-law of Mrs. Ray; that she came to his home during the month of August, 1920, and remained there for one month; that when she came she was in poor physical condition and at times troubled with weak spells; that he noted a marked improvement in her condition while she was at his home; that on several occasions she talked with him regarding the sale of her land in Hoke county; that she understood and remembered the details of the transaction had with Mr. MacRae in Durham; she said that she thought that she had made a good trade, as the price to be paid for the lands was more than was paid for any of the adjoining lands; that he is of the opinion that she was of sound mind and understanding when he had these conversations with her, and that it was her desire to carry out the trade for the purchase price named in the contract; that she said she thought it was better to sell the land and collect the money than to have the matter tied up indefinitely. He further says that, in his opinion, $15 an acre is a fair price for the land. Exhibit H.

R. C. Cox, the notary public who took the affidavit of Mrs. Ray to the petition on January 22, 1920, testifies that, before taking her affidavit, he asked her if she had read or heard the petition and if she thoroughly understood the contents thereof, to which she replied that she had heard the petition read, and that she thoroughly understood its contents, and that she executed the paper for the purpose therein stated. He says that he is of the opinion that Mrs. Ray was at that time of sound mind, and, if there had been any doubt in his mind as to her understanding and mental capacity, he would not have taken her verification. Exhibit 1.

The foregoing constitutes the evidence before me regarding Mrs. Ray's mental condition at the time she signed the contract. Exhibit J and the petition for the sale; Exhibit K.

The evidence in regard to the value of the land, in addition to the affidavits of J. H. Smith, A. B. McFayden, and R. B. Gatlin, Exhibits A, B, and C, J. W. Johnson and W. T. Covington, Exhibit D, and Neil D. Black, Exhibit 1, are the statements of said Smith, McFayden, and Gatlin in Exhibits A, B, and C, September 1, 1920, in which each of them say:

"That, when he signed the affidavit in the above proceeding in this court, he was informed that the parties interested had agreed to take a lower figure ($5,811) named in the affidavit; that he knows the land involved in this proceeding and is of the opinion that the above figures ($7,428) give a fair value for the same."

A. B. McFayden makes an affidavit November 13, 1920, in which he recites his opinion that the above figures give a fair value of the land—

"and he further states that, taking into consideration the character and location of the land, he is still of the opinion, and so states, that, though $7,428 is a full value for the same, a sale of the lands at the price of $5,811 is a fair, adequate, and advantageous sale to the owners of said lands." Exhibit L.

Neil D. Black says that, in his opinion, the sum paid by the government is a fair price therefor; that it represents its true value.

If the disposition of the motion was dependent altogether upon the allegation that Mrs. Ray was non compos mentis, unable, by reason of mental incapacity, to understand and appreciate the effect upon her rights of the paper which she directed her daughter to sign for her on June 19, 1920, proposing to sell the land, I would have difficulty in reaching the conclusion that such was her mental condition. I am satisfied, from the evidence, that she was in a weakened, debilitated physical condition, resulting from the attack of the influenza through which she had recently passed, and doubtless her mental condition was affected by her physical state. If the government was seeking to compel her to specifically perform the contract, I would, in the exercise of the judicial discretion which the chancellor is directed to exercise, leave the plaintiff to his legal remedy, but I am unable to find that, when she verified the petition in the special proceeding before Mr. Cox, she did not then understand its purpose and effect. As to her the proposal to sell has passed into an executed contract; the title has, by virtue of the orders and decrees and the deed by the commissioner, vested in the United States. While the evidence in regard to the price at which the land was sold is conflicting and unsatisfactory, the valuation placed by Smith, Gatlin, and McFayden, as appraisers selected by the government, May 5, 1920, is the only satisfactory basis upon which I can act. If Mrs. Ray and her children had been apprised of that valuation, I would have regarded this sum, $7,428, as conclusive. I do not attach weight to the affidavits made by the appraisers of June 30, 1920, upon which the clerk based his order. In Odom v. Riddick, 104 N. C. 515, 10 S. E. 609, 7 L. R. A. 118, 17 Am. St. Rep. 686, the jury found that the grantor was not of sufficient mental capacity to execute the deed. The court in a well-sustained opinion held that, in the absence of knowledge of such fact on the part of the gran-

tor, and of any fraud or undue influence, the deed was not void, but only voidable.

Passing, for the present, however, the effect of the paper writing signed by Mrs. Ray upon her rights, the guardian insists that the proceeding in the superior court by virtue of which the title of the infant children was conveyed is irregular, contrary to the course and practice of the court, and that all orders and decrees made therein should be vacated and set aside.

The record discloses that at the time the petition was filed, June 22, 1920, no order had been passed appointing C. W. Broadfoot next friend of the infants, nor was any such order made, nor did he accept such appointment until June 30, 1920, the day upon which the order of sale was made.

It is difficult to understand why Mr. Broadfoot applied to the clerk, as the record discloses, on April 21, 1920, to be appointed the next friend of these infants, two months before any suggestion is made to their mother to sell the land. He simply states the infants own undivided interests in the land, that it is described as tract No. 301, Camp Bragg area, and that it is desirable that there shall be a sale of the lands; no reference is made to any condemnation proceeding, although such a proceeding had been instituted; "that the persons closely connected with said infants are interested in the result of said action, and for that reason he has been requested to apply for the appointment as next friend; that he has no interest in the result of the action, except to see that the rights of said infants are protected." So far as appears from the record, no action was taken upon this application until June 30, 1920, although the petition for the sale of the land is verified by Mrs. Ray on June 22, 1920, in which Mr. Broadfoot appears as the next friend of the infants.

The application falls far short of complying with the rule prescribed by the judges of the superior court (92 N. C. 850–855, rule 15), which requires the application to be filed "by a reputable, disinterested person closely connected with such infant," but, if such person will not apply, then upon like application by some reputable citizen, etc.

Of course, there is no suggestion that Mr. Broadfoot is not such a reputable citizen as the rule requires, but the application fails to assign any other reason than that those closely connected with the infants are interested in the result of the action. It is manifest that the mother had precisely the same interest in securing a fair price for the land as her children. The reason assigned does not meet the spirit of the rule. The clerk, so far as appears from the record, took no action upon the application until two months after it was filed and more than one month after the petition was filed. Without attributing to Mr. Broadfoot any improper purpose, it is manifest that the clerk did not give consideration to the appointment. He failed to comply with the measure of duty imposed upon him by repeated decisions of the courts of this state. Morris v. Gentry, 89 N. C. 248, and many other cases.

It does not appear whether Mr. Broadfoot was aware of the valuation placed by the appraisers on this land. That he was not aware of this important fact is manifested from the allegation (No. 5) of the

petition "that the said lands had been appraised by the following citizens of Hoke County: J. H. Smith, B. R. Gatlin, and A. B. McFayden—and the value found to be $5,811 as being full, fair, and adequate."

There is nothing in the record to indicate that Mr. Broadfoot gave the interests of his quasi wards any personal attention or consideration.

The record shows that the clerk, acting as the judge, made the order of sale upon the allegations in the petition and the ex parte affidavits of three citizens made on the day of the order that $5,811 was a fair and adequate price for the lands; whereas they had on May 5, 1920, appraised it for the purchasing government at $7,428. This they explain by saying that they were informed that the parties were willing to sell at the lower sum.

. While it is conceded that the court may entertain a petition for the sale of the lands of infants, without general guardian, when represented by a next friend, as said by Justice Ruffin in Campbell v. Baker, 51 N. C. 256–258:

"It is unsafe to decree a sale of the lands of infants, except on the application of the guardian, as a responsible person, under bonds for his fidelity."

The statute (Revisal, § 1798) provides the procedure by which a guardian may secure an order for the sale of the lands of his wards. It requires that, a petition by the guardian, verified upon oath, showing that the interest of the ward would be materially promoted by the sale, and the truth of the matter alleged in the petition being ascertained by satisfactory proof, a decree may be made, etc.

Here the next friend does not verify the petition, for the manifest reason that he had not, at the time the petition was filed, been appointed. The record in this case illustrates the wisdom of the language of Chief Justice Ruffin in Harrison v. Bradley, 40 N. C. 136 (144):

"The court cannot forbear expressing a decided disapprobation of the loose and mischievous practice adopted in this case of decreeing a sale of an infant's land upon ex parte affidavits offered to the court, without any reference to ascertain the necessity and propriety of the sale, and the value of the property, so as to compare the price with it. The court ought not to act on mere opinions of the guardian or witnesses, but the material facts ought to be ascertained and put upon the record, either by a report of the master or the finding of an issue; and after a sale it ought to appear in like manner to be for the benefit of the infant to confirm it. Otherwise there is great danger of imposition on the court and much injury to infants."

It is worthy of note that neither of the persons who made the affidavits as to the value of the lands verified them before the clerk. The result of the examination of the entire record discloses that when the petition was filed no one was authorized to represent the infants; that they were without natural or statutory guardian or next friend. Their mother was sick, both mentally and physically. No one representing the infants or interested to protect their rights, ever appeared before the court. They were girls, and, so far as appears, residing in another county.

Without attributing to any one concerned any purpose to deprive them of their rights, I am constrained to conclude that, as to the infants and their rights, the proceeding, from start to finish, is irregular

and contrary to statutory rules of procedure and a uniform current of decided cases in the courts of this state.

The order or decree directing the sale and all that has been done thereunder will be vacated and set aside.

I am not clear as to my power to deal with the interest of Mrs. Ray. While the appointment of Mr. McLauchlin as her guardian cannot be questioned collaterally in this cause and she is pro hac vice represented by him, such appointment does not affect the validity of her contract or proposal to sell her dower interest in the land.

If the orders made in the special proceeding, so far as they affect her interest, be set aside, her contract subsists until annulled in a direct proceeding instituted for that purpose. While until her dower is allotted she has no estate or interest in the lands which she can convey, she has a right which may be assigned by which her assignee would be entitled to her dower estate when allotted. Fishel v. Browning, 145 N. C. 71, 58 S. E. 759.

Whether the deed executed by Mr. MacRae as commissioner conveys Mrs. Ray's right to dower and entitles the United States to have a sale of the infants' land in the proceeding before the clerk upon a regular procedure is doubtful. She is entitled, if so advised, to maintain an action in the nature of a bill in equity to set aside the alleged contract or proposal and the deed made by the commissioner upon the ground that she was non compos mentis and for such other causes as she may see fit to rely upon. A chancellor would probably grant her relief, but I am very doubtful whether in this proceeding I have the power to do so.

As the government has a judgment of condemnation in this proceeding of this land and all parties are in the record, it would seem that complete relief could be had without further delay by a decree setting aside the contract, the orders and decrees, canceling the deed made by the commissioner, and directing the clerk to return the $5,811 in his hands to the government, thus placing the parties in the same position they were in before the negotiation for the purchase was begun.

Mr. McLauchlin, guardian of Mrs. Ray and the infants, will be made a party to the condemnation proceeding. Summons will issue to him to the end that he may file such pleadings and take such action as he may be advised to be necessary to protect the interests of his wards. It is noted that the bond filed by him is for the penal sum of $400. It is suggested that this sum is inadequate and not in accordance with the statute of this state.

It is worthy of consideration whether the interest of the widow and her children will not be best conserved by holding the proceeds of the land, when paid into court, and paying one-third of the interest thereon to the mother during her life, thus preserving the inheritance for her daughters.

For the present an order will be signed vacating and setting aside the orders and decrees made in the special proceedings instituted in the superior court of Hoke county, with such orders respecting the disposition of the amount in the hands of the clerk as may be agreed upon by counsel or directed by the court.

A copy of this opinion will be certified to the clerk of the superior court of Hoke county, and the cause retained for such further orders as may be necessary.