Richardson v. Peacock.

WILLIAM B. RICHARDSON

v.

JAMES M. PEACOCK.

1. Where a defendant agreed not to carry on a certain kind of business at a place and in a manner specified, and it appears that the business in which the defendant was engaged at the filing of the bill was his own, and differed from that in which he was engaged at the time of making the agreement only in the fact that the losses, if any, were borne by his consignors instead of by himself, and that his profits were limited to a certain percentage, *Held*, a violation of the letter and spirit of this covenant, to restrain which an injunction will issue.

2. Neither the rate or mode of compensation, nor the name by which the defendant calls the business, will make any difference, so long as it is his business and a substantial violation of his covenant.

Bill for relief.    On final hearing on pleadings and proofs.

*Mr. S. H. Grey*, for complainant.

*Mr. A. C. Scovel* and *Mr. P. L. Voorhees*, for defendant.

THE CHANCELLOR.

This suit is brought to restrain the defendant from breaking his covenant, made with the complainant on the 14th of November, 1863, by which, in consideration of $2,000 paid to him by the complainant, he agreed with the latter that he would not, for the space of two years from that date, ship or send any poultry to the city of New York or to the city of Washington without the consent or permission of the complainant, and that he would not, at any time after two years from the date of the agreement, send or ship any poultry coming from the counties of Salem, Cumberland, Camden and Gloucester, in this state, and South street, in Philadelphia, to either the city of Washington or the city of New York, and that he would ship no

poultry to those cities so that the same might in any wise interfere with or prejudice the poultry-shipping business of the complainant.

The evidence shows that the above mentioned $2,000 were paid almost entirely as consideration of the covenant. The defendant had been extensively engaged in the business mentioned in the agreement, drawing his supplies from the above mentioned counties in this state, and South street in Philadelphia, and finding his market in the cities of New York and Washington. The complainant purchased the defendant's trade fixtures in his place of business, No. 121 South street, in Philadelphia, and the good will of his business, which it was intended to secure to him by the above mentioned covenant. The fixtures were of trifling value. They were a desk, two old boxes, and a platform scale, and were worth only about $25; so that, as before stated, the consideration, $2,000, paid by the complainant, was almost entirely for the covenant.

The bill alleges that the defendant, in violation of his agreement, was, at the time of filing the bill, engaged (but pretending to act merely as agent for others) in the business prohibited by the covenant, to the great prejudice and damage of the complainant, who was then carrying on that business and had invested a large amount of capital therein.

The defendant, by his answer, admits the making and existence of the covenant, but denies that he is acting in violation of it. It alleges that the business carried on by him, and complained of, was merely the sale of poultry for others, on commission; that he so sold, in the city of New York, for Edward Fitzgerald, doing business at South street in Philadelphia; for A. Robbins, David Bassett and Yonker Brothers, of Salem county, and William Middleton, of Gloucester county. It states that these firms and persons each allowed and paid him a commission of five per cent. on the amount of all sales by him for them; that he had no control, custody, responsibility or care over, about or concerning the poultry shipped to him by them, and had nothing what-

Richardson v. Peacock.

ever to do with it until it was received by him in the city of New York, and that after he received it there he sold it for the best price he could get, and returned the proceeds of the sales to the shippers, after deducting his commissions of five per cent. on the sale thereof.   The proof shows that the business in which he was thus engaged at the time of filing the bill, was his own business, and differed from that which he was carrying on at the time of making the agreement only in the fact that, as he alleges, the losses, if any, were borne by his consignors, instead of by himself, and that his profits on his transactions were limited to five per cent. on the price at which the goods were sold.   In case of loss, he, as he testifies, was not entitled to commissions on the sale of the goods, the price of which was not collected.   He had a place of business in the city of New York, in a location where he could carry on the trade to the best advantage, and in the fullest competition with the complainant.   He was known and regarded there as a regular dealer in poultry. He sold the goods in advance of the receipt of them, to persons in the city of New York, and notified his principals of the sales, and directed them to send the goods accordingly. In most cases they were sent by them directly to the purchasers.   That the defendant designed, by this method of carrying on the business, to evade the liability imposed upon him by his covenant, he does not deny.   He, indeed, qualifies his admission, by saying that he did not intend to evade it in this way unjustly or unfairly, but there is no proof to the contrary.   Benjamin H. Browning testifies, that in 1873, after the defendant had ceased to do business in connection with John Richardson (the complainant's brother), he had a conversation with the former on the subject.   He says: "He (the defendant) said I was hasty in my judgment, and was doing him injustice, like Mr. Woolston.   I asked him why he did not leave the mean, dirty business; that Richardson (the complainant) had bought him out, and why did he not let him alone ?   I told him I thought he could live without it and above it, and that he ought to let Will Richardson

alone, who had a family to support. He said he had a right
to do as he pleased; and then I told him that if he had, I
was wrongly informed. He told me he thought he had a
right to do as he pleased. I don't know that this was all
that was said. This was the substance of what was said.
I had other conversations, but I only remember this one
distinctly. I said to him, further: 'He (Richardson) came
and bought you out, like a man, instead of trying to
drive you out by competition, and you should let him
alone, as you can well afford to do.' He attempted to
justify himself in the course he was pursuing. He said he
thought he had a right to do what he was doing; I thought
not. I don't know whether Peacock said he had not violated
his agreement with Richardson or not. I can't tell about
that; he may have said so. The most stress he laid upon
it was, that Will (Richardson) had not been fair with him."

After the making of the agreement, the defendant made
a business connection with the complainant's brother, John,
in the poultry-shipping business, without the complainant's
consent, and carried it on, in competition with the complain-
ant, from the fall of 1871 to the spring of 1873, and, when
the latter expostulated with him on the subject, because he
was packing poultry and forwarding it to the complainant's
customers and others in the city of New York, he said "he
meant to sell, and would sell, to any of the complainant's
customers, and that he would pay the complainant to try to
stop him."

That the defendant, at the time of filing the bill, was
engaged in a business of his own procurement and on his
own account, which was in violation of the spirit of the cov-
enant between him and the complainant, and which inflicted
upon the latter serious and continued injury, there can be
no doubt. The defendant insists that he had and has a right
so to carry on the business, notwithstanding the covenant.
By the covenant he agrees, among other things, that he
will not, at any time after its date, send or ship any poultry
coming from the counties of Salem, Cumberland, Camden
and Gloucester, in this state, and South street, in Philadel-

phia, to either Washington or New York; and that he will ship no poultry to either of those cities, so that the same may in any way interfere with or prejudice the poultry-shipping business of the complainant. The method in which the sending or shipping of the poultry is effected by him is a matter of no importance, nor is the method or amount of compensation nor his way of conducting the business... If, in fact, he is engaged in the business against doing which he has solemnly covenanted, he ought, in equity, to be restrained. What matters it whether he conducts the prohibited business on one basis or another, if it is indeed a violation of his covenant? Has he not been, in fact, since the covenant was made, sending poultry from the counties mentioned therein, and from South street, Philadelphia, to New York? Has he not, in fact, shipped poultry to that city so as to interfere with and prejudice the complainant's business of shipping poultry? Can it make any difference whether in so doing, he received one rate of compensation or another, or whether he called the business by one name or another, or what the terms on which he conducted it were, so long as it was his business? In *Newling* v. *Dobell*, 17 *L. T.* (*N. S.*) 486, where a man who had sold his business, good will, fixtures, &c., to another, and had covenanted not to carry on or be concerned or interested in the business of a tailor within five miles of the former shop, engaged himself as a journeyman, at a weekly salary, to his nephew, of the same name with himself, who was carrying on the same trade within a quarter of a mile of his former place of business, it was held that this was within the spirit and letter of the covenant, and he was restrained by injunction.

There is evidence that the defendant's business was by no means confined to the so-called commission business. He was known as a general dealer in poultry, and was understood, from his transactions with those with whom he dealt, to be selling on his own account. I am of opinion that the defendant has violated the letter and spirit of his covenant, and he will be enjoined accordingly.