H. L. GODWIN v. T. A. PARKER, GUARDIAN.

(Filed 27 May, 1910.)

**1. Deeds and Conveyances — Insane Persons — Knowledge — Valid Contracts—Loss.**

A contract made with an insane person by one with knowledge of the fact of insanity, is void, and the one so contracting must bear the loss attendant upon the void transaction: *Hence,* when the one thus dealing has erected a building on the land contracted for, he is not entitled to betterments.

**2. Same—Judgments—Equity.**

In this case the plaintiff sued for the specific performance of a contract made with an insane person, and the verdict of the jury established the fact of insanity and plaintiff's knowledge thereof at the time. It likewise appeared that plaintiff had erected a building on the land at a cost, by his own evidence, of $475, found by the verdict to be now worth $1,000, but had been in possession for eight years, collecting an annual rent of $100: *Held,* a judgment should be entered decreeing that defendant recover possession; that the alleged contract be canceled of record; that defendant be not charged with taxes paid by plaintiff on the property, and that the latter be not required to account for the rents and profits by him received.

APPEAL from *W. R. Allen, J.,* at November Term, 1909, of HARNETT.

The plaintiff brought this action to compel specific performance of the following contract:

NORTH CAROLINA—Harnett County.

I, Bud Tart, of said county and State, have this day given to H. L. Godwin the privilege of erecting a store building on my lot in Dunn, N. C., the same being lot No. 11 in the subdivision of the original lot No. 3 in block R in the blue-print, plan of town of Dunn, N. C. The said H. L. Godwin has the privilege of remaining in possession of said lot for three years from the date of this contract, and he is required to keep the taxes paid on said lot. And it is agreed and understood, and I do hereby bind myself, my heirs, executors and administrators to make a good and lawful deed to H. L. Godwin, his heirs or assigns, upon the receipt of the sum of $360, which must be paid indefinitely (immediately) upon the expiration of this contract, or at any time before it expires.

his
BUD ✕ TART.        (SEAL.)
mark.

H. L. GODWIN.        (SEAL.)

His Honor submitted the following issues to the jury, which were responded to as set out:

1. Did the plaintiff and the defendant Bud Tart execute the contract set out in the complaint? Answer: Yes.

2. Did Bud Tart, at the time of executing the said contract, have sufficient mental capacity to make same? Answer: No.

3. If not, did the plaintiff have notice of said mental incapacity? Answer: Yes.

4. What was the value of said lot on 17 June, 1902? Answer: $360.

5. What was the value of the improvements put on said land by H. L. Godwin? Answer: $1,000.

6. What was the annual rental value of the lands before the improvements were put upon it by the plaintiff? Answer: Nothing.

7. What was the annual rental value after the improvements were put upon it by the plaintiff? Answer: $100.

Upon the verdict, his Honor rendered the following judgment:

"This cause came on for trial at the November Term, 1909, of the Superior Court of Harnett County, before *W. R. Allen, Judge,* and a jury, and the jury having returned their verdict, as appears in the record, it is, upon said verdict and the admissions in the pleadings, considered and adjudged that the defendant Bud Tart is the owner in fee of the lot described in the complaint, and that he is entitled to recover possession thereof of the plaintiff, H. L. Godwin, upon the payment to him of the sum of $1,000, the value of the improvements placed on said land by the plaintiff.

"And it further appearing to the court that the defendants still refuse to perform the contract referred to in the issue, and that they demand possession of said lot, it is further considered and adjudged that said sum of $1,000 is due to the plaintiff, H. L. Godwin, and the same is a lien on said lot, and, upon failure to pay the same within ninety days it is ordered that the said lot be sold for the satisfaction thereof by N. A. Townsend and E. F. Young, now appointed commissioners for that purpose, who shall report their proceedings to this court.

"It is further ordered that each party pay his costs. Let the pleadings be amended, if so advised."

The plaintiff testified, over the objection of the defendant, that he had been in possession of the lot since June, 1902; that he knew Bud Tart had been in the asylum; that he returned to the asylum at Raleigh; that the building put by him on the lot cost him $475, not exceeding $500; that its rental value was

$100 per year; that he had received the rents; that he had tendered the amount he was to pay to defendant Parker, as guardian of Bud Tart, and demanded a deed from him; that Parker declined to make the deed. Another witness for plaintiff testified that Bud Tart, at times, looked dangerous. The summons showed service on Dr. James McKee, superintendent of the State's Hospital at Raleigh, N. C., where Bud Tart was confined; the service was made 17 June, 1905. There was evidence that the unimproved lot was worth, in June, 1902, from $300 to $400, and that it had since then increased in value. The defendant tendered the following judgment:

"This cause coming on to be heard, and being heard before his Honor, *W. R. Allen,* and a jury, and the issues answered as follows (here follows the issues as set out above):

"It is now considered, ordered and adjudged that the defendants, Bud Tart and his guardian, T. A. Parker, recover of the plaintiff, H. L. Godwin, the possession of the said land described in the complaint; and it is further ordered and decreed that the paper-writing or contract referred to and set out in the complaint be canceled of record; and it is further adjudged that the plaintiff pay the costs of this action, to be taxed by the clerk."

To the judgment of the court, defendant excepted and appealed to this Court.

*Godwin & Townsend* and *J. C. Clifford* for plaintiff.
*E. F. Young* and *H. E. Norris* for defendant.

MANNING, J. In our opinion, the judgment of his Honor is not supported by the adjudications of this Court. The jury found that Bud Tart was insane at the time he attempted to contract with the plaintiff, and his insanity was known to the plaintiff. Upon a verdict establishing the same facts, this Court, in *Creekmore v. Baxter,* 121 N. C., 31, said: "The first two issues found facts which constitute fraud in law. No other kind of fraud was charged in the pleadings; and the third issue, referring to actual fraud in fact, is neither necessary nor contradictory. It cannot be doubted that any one dealing with an insane person, knowing his insanity, deals with him at his own peril." "The ground upon which courts of equity interfere to set aside the contracts and other acts, however solemn, of persons who are idiots, lunatics or otherwise *non compos mentis,* is fraud. Such persons being incapable, in point of capacity, to enter into any valid contract or to do any valid act, every person dealing with them, knowing their inca-

pacity, is deemed to perpetrate a meditated fraud upon them and their rights." Story Eq. Jur., sec. 227; Adams Eq., 183; *Odom v. Riddick,* 104 N. C., 515. In *Sprinkle v. Wellborn,* 140 N. C., 163, *Mr. Justice Walker,* speaking for this Court, said: "If, therefore, one person induces another, who lacks this capacity or this freedom, to enter into an apparent contract, equity will not recognize the transaction, however, as one author says, it may be fenced by formal observances, but, deeming it fraudulent, will in proper cases afford relief against it at the suit of the party imposed upon. Fetter on Equity, 143. On this ground, the contracts of idiots, lunatics and other persons *non compos mentis* are generally regarded in a certain sense as invalid. It has been said by many courts that the contracts of a lunatic, made after the fact of insanity has been judicially ascertained, are absolutely void, and that he can have no power to contract at all until there is reversal of the finding and he is permitted to resume control of his property. Fetter Eq., 143; *Odom v. Riddick,* 104 N. C., 515." *Beeson v. Smith,* 149 N. C., 142.

· The plaintiff's evidence established the fact that the insanity of Bud Tart had been judicially ascertained, for it appeared that he had previously been committed to the State's Hospital for the care of the insane, and the verdict establishes the fact of his insanity at the time of the alleged contract, to the knowledge of the plaintiff. In *Creekmore v. Baxter, supra,* this Court said: "Courts of equity always protect innocent purchasers as far as possible, and ordinarily place the parties back in *statu quo,* when it can be done without injury to either; but if any one contracts with a lunatic, knowing his insanity, he must bear alone whatever loss arises from the transaction."

The evidence of the plaintiff himself shows, however, that a reversal of the judgment can work no loss or inequity to him; he has now had possession of the property for nearly eight years, at a rental of $100 per year, and the improvements put by him on the lot cost him, by his own evidence, $475. From this statement it clearly appears that the plaintiff will sustain no loss by the improvements placed by him upon the property. In no event is he entitled to betterments.

It is our opinion that his Honor should have signed the judgment tendered by the defendant, and that he was in error in signing the judgment tendered by plaintiff. We, therefore, reverse the judgment of his Honor and direct judgment to be entered in accordance with this opinion, without liability to the plaintiff to further account for the rents and profits by him received to 17 June, 1910, and without charge to the defendant

for the taxes which may have been assessed against said property, and which are to be a charge against the plaintiff. The plaintiff will pay the costs of this action.

Reversed.