This is an action to recover money, and is based upon the (589) following facts:
The Forest Hill Realty Company conveyed to S. M. Hanie a lot in the city of Charlotte, and S. M. Hanie gave to Forest Hill Realty Company his notes for the purchase money of said lot and secured the same by deed of trust to James L. DeLaney. The Forest Hill Realty Company assigned said notes to J. J. Harrill, who, in turn, transferred the same to the plaintiff. S. M. Hanie executed a second deed of trust to A. P. Rucker to secure an indebtedness to J. W. Lewis Co., and the trustee in the first deed of trust and the realty company released to make the second deed of trust a first lien upon the property. Subsequently, Hanie conveyed the property to H.G. Rogers, and in the deed to Rogers from Hanie the following clause was inserted: "Said party of the second part (H.G. Rogers) hereby assumes the payment of two certain deeds of trust, one to J. L. DeLaney and one to A. P. Rucker." H.G. Rogers then conveyed the property to the defendant J. J. Misenheimer, and in the deed from Rogers to Misenheimer there is this clause: "The party of the second part hereby assumes the payment of two certain deeds of trust, one to J. L. DeLaney of $450, and one to A. P. Rucker, trustee, for $1,200. Also one note for $200, payable to Frank A. Rogers, which note the party of the second part hereby assumes as a part of the consideration of this conveyance." The notes secured by the deed of trust to DeLaney are those for the recovery of which this action is brought. J. J. Misenheimer conveyed the property to Miss Brown, in which deed was inserted a clause similar to the one which is in the deed from Rogers to Misenheimer. A. P. Rucker, trustee, foreclosed his deed of trust, and the property brought, at the foreclosure sale, an amount *Page 474 
sufficient only to pay the notes secured by his deed of trust, leaving the notes secured in the deed of trust to J. L. DeLaney unpaid. This action is brought against S. M. Hanie, the maker of the notes, and also against H.G. Rogers and J. J. Misenheimer and Miss Brown, to recover against them personally the amount of the notes. The court held that the action was originally brought upon the theory that the assumption of J. J. Misenheimer and of H.G. Rogers and of Miss Brown (590) established a contractual relation between the plaintiff and the said defendants, so that he had a right to bring an action on the contract directly against them. The defendant J. J. Misenheimer demurred to the complaint, and the demurrer was sustained. The plaintiff then, by order of the court, field an amended complaint upon the theory that he had an equity to be subrogated to any right S. M. Hanie had as against H.G. Rogers, and upon the further theory that the doctrine of subrogation could be extended from H.G. Rogers to J. J. Misenheimer and from Misenheimer to Miss Brown. Hanie and Rogers are insolvent. The court held that the plaintiff was entitled to recover against Hanie and Rogers, but not against Misenheimer and Brown. Plaintiff excepted and appealed.
After stating the case: The court should not have ordered an amendment of the original complaint. It was quite sufficient, in its allegations, to warrant a recovery upon the theory of subrogation or that of contract. The prayer does not narrow the scope of the pleading to its own limits, but a party can recover now according to the facts he states in his pleading, and not necessarily or only according to his prayer. Voorhees v. Porter,134 N.C. 591; Knight v. Houghtalling, 85 N.C. 17; Council v. Bailey,154 N.C. 54; Silk Co. v. Spinning Co., ibid., 421, in which cases we said that the special prayer of the plaintiff for other relief does not deprive him of that to which he is entitled upon the allegations of his complaint. The sole point of law involved in this appeal is as to the right of plaintiff (holder of the ten purchase-money notes) to recover of defendant Rogers, Misenheimer, Miss Brown, and Mrs. Purse, nee
Smith, the money secured thereby, all of said defendants having personally assumed the payment of said notes.
In cases of this kind a recovery by the mortgagee from a vendee of the mortgagor of a deficiency in the mortgage debt after foreclosure (591) has been allowed on two grounds. Many of the courts of this country — probably a large majority — allow recovery in such a case upon the broad principle that a third person may maintain an action on a contract made for his benefit. Though the present case seems *Page 475 
to present a good opportunity for the application of that principle, yet from a consideration of the decisions of this Court they appear not to have gone so far.
The other ground upon which a recovery has been allowed against a grantee of the mortgagor is under the doctrine of subrogation, by which, in equity, a creditor may have the benefit of all collateral rights, remedies, and securities for the payment of the debt which a person standing in the relation of a surety for others holds for his indemnity. It has been held that an agreement by the purchaser of an equity of redemption with his vendor that he will assume and pay the mortgage debt will render him personally liable, not only to his grantor, but also directly to the holder of the mortgage. The original doctrine, which is still sometimes advanced, was that this right of the mortgagee to hold the purchaser of the equity of redemption, by reason of the latter's agreement with the mortgagor to assume the payment of the mortgage debt, does not mean that the mortgagee can maintain an action at law upon this agreement between the mortgagor and the purchaser, but rests upon the ground that the contract of the purchaser is a collateral stipulation obtained by the mortgagor, which by equitable subrogation inures to the benefit of the mortgagee. The mortgagee is said to stand on the rights of his debtor, and to be entitled to appropriate for his debt any security held by his debtor for its payment, and his remedy is restricted to the privilege of subrogation to his rights, and will give him no rights against the purchaser which could not, under the contract of purchase, have been claimed by the original debtor. Accordingly the mortgagee has been allowed to enforce the personal liability of such a purchaser only to the extent of the deficiency upon a foreclosure sale of the mortgaged premises, and only if the party to whom the purchaser's agreement was given was himself personally liable for the payment of the mortgage debt. The doctrine of equity is that when the grantee in a deed assumes the payment of the mortgage debt, he is to be regarded as the (592) principal debtor, and the mortgagor occupies the position of a surety, as between themselves, and the mortgagee is permitted to resort to the grantee to recover the deficiency after applying the proceeds of a sale of the mortgaged premises, by the equitable rule that the creditor is entitled to the benefit of all the collateral securities which his debtor has obtained to reinforce the principal obligation, though this right is strictly an equitable one, and its exercise at law has been refused. But the broad doctrine has since been laid down, that one for whose benefit a promise is made to another may maintain an action upon the promise, though he was not a party to the agreement or privy to the consideration thereof; and it was then held in unqualified terms that whoever has for a valuable consideration assumed and agreed to pay another's debt *Page 476 
may be sued directly by the creditor, and that a mortgagee or other encumbrancer may maintain a personal action against a purchaser from the owner of the equity of redemption who has agreed with his grantor to assume and pay off the encumbrance, if the party with whom the agreement was made was himself personally liable upon the mortgage debt, and that the purchaser who has made such an agreement cannot afterwards be released therefrom by his grantor, to whom it was made, without the consent of the creditor, to whose benefit it inures, if the latter has accepted it. The same rule will be applied to the case of any other encumbrance. But the mortgagee can simply hold such a purchaser to the performance of his agreement; he will not be subrogated to any other right against the purchaser. The development of this doctrine is doubtless an outgrowth of the law of substitution. It is sufficient to say that it has also been emphatically denied, and the court which laid down this proposition in its broadest terms (Lawrence v. Fox, 20 N.Y. 268) has refused to apply it to other somewhat similar cases, and has said that the rule is one which ought not to be extended.
The above principles are similarly stated by Mr. Sheldon, in his work on Subrogation, but, in the reference to the right of recovery at law on the contract, as having been made for the benefit of the several (593) grantees, he classifies the courts and assigns this one to those of the class which deny the doctrine of a recovery ex contractu, but sustain it upon the equitable principle of subrogation, citing in support of the statement Peacock v. Williams, 98 N.C. 324, to which may be added Woodcock v. Bostic, 118 N.C. 828, and they seem to be aptly cited for that purpose.
We prefer, therefore, in view of the conflict of authority and the previous leaning of this Court towards the equitable right of subrogation, not to put our decision upon the disputed doctrine, but rather to adopt the other reason, which is free from doubt, as its basis. If the question as to the strict contractual rights of the parties should ever arise, we may then, perhaps, consider it in the light of some more recent decisions in this Court. We may well rest our decision upon the case of Woodcock v.Bostic, 118 N.C. 828, in which the Court distinctly recognized this principle of equitable subrogation, as between the original vendor and purchaser, when the latter had assumed to pay the encumbrance. The note secured by the mortgage in that case had been transferred to the plaintiff, as was the note in this case, so that the facts of the two cases are precisely the same. The Court, it is true, refused to allow a recovery in that case, because the equitable right was not asked for; but we think, in that respect, it failed to apply the invariable rule under our Code, that relief is granted according to the facts pleaded, and not merely according to the prayer, as the facts stated warranted the granting *Page 477 
of the relief. The case, though, sufficiently settles the other point, but it does not go beyond the first grantee in its scope. It cites Haydenv. Snow, 14 Fed., 70; Keller v. Ashford, 133 U.S. 610, to which may be added 20 A. E. Enc. of Law (2 Ed.), 990; King v. Whittey, 10 Paige (N. Y.), 467; Ins. Co. v. Hanford, 143 U.S. 187; Henry v.Heggie, ante, 523, as to the equitable liability of the first grantee. Professor Minor, in his great treatise on Real Property, says: "If the assignee (of the land) does thus assume payment of the mortgage debt, he thereby becomes the principal debtor, and the original mortgagor is only liable subsidiarily as a surety. And while the mortgagee may continue to hold the mortgagor personally liable upon his (594) contract to pay the debt, notwithstanding the assumption of the mortgage by the purchaser of the land, he may also, it seems, hold the purchaser directly responsible; though he is not a party to the agreement between the mortgagor and the purchaser — a right based sometimes upon the principle that one may sue upon a contract to which he is not a party, if it be made for his benefit, and sometimes upon the theory of the subrogation of the mortgagee to the rights of the mortgagor (the surety) against the purchaser (the principal debtor)." 1 Minor on Real Property, sec. 647. See, also, 2 Tiffany on Real Property, sec. 528; 20 A. E. Enc. (2 Ed.), 992 et seq.; 3 Pomeroy Eq. Jur., secs. 1206, 1207.
But the doctrine reaches beyond this and extends to all the subsequent and successive grantees in the chain of assumptions, each forming a link in the chain which binds the last and the intervening purchasers of the equity of redemption, upon their agreements to assume, for the payment of the lien, not only to the first purchaser, but to his vendor and the mortgagee.
In our case, Miss Brown could hold Mrs. Purse (nee Smith) upon her assumption; and since, as between the immediate parties, Miss Brown was principal and Misenheimer surety, Misenheimer could not only hold Miss Brown on her assumption, but by virtue of the equitable doctrine of subrogation he could also take advantage of Miss Brown's right of recourse to Mrs. Purse (nee Smith); and since Misenheimer was legally bound to Rogers for the debt, Rogers could enforce all of Misenheimer's rights, including the right to proceed against both Miss Brown and Mrs. Purse (nee Smith). But Rogers, in his turn, was bound by his obligation to Hanie, so that Hanie could stand in Rogers' shoes and enforce all of his (Rogers') rights, and could, therefore, take advantage of Rogers' right to recover of Misenheimer, and so forth.
Now the plaintiff, as the holder in due course of the notes, can recover of Hanie, the maker of the notes, and can have the advantage of all subsisting obligations in the hands of Hanie securing the payment thereof. So that we reach the inevitable and logical conclusion that by reason of *Page 478 
his equity, as creditor, to be subrogated to all the debtor's rights, (595) remedies, and securities, plaintiff can recover judgment against each and every one of the defendants. It was argued by counsel for the defendants, as we have stated, that because there was no privity between Hanie and Misenheimer, there could be no recovery against Misenheimer, as there was no right of recourse to Misenheimer in favor of Hanie to which plaintiff could be subrogated. The court below, in sustaining this contention, misconceived the theory and scope of the doctrine of subrogation. If Hanie had, strictly speaking, and primarily, no cause of action against Misenheimer, there was in favor of Hanie the equity to be subrogated to all the rights, remedies, and securities of Rogers, and among them was the right to go against Misenheimer. There is not lacking ample authority for the position here taken. 27 Cyc., 1355, which says: "If mortgaged property passes through the hands of successive grantees, each of whom assumes the mortgage, the personal liability of the last holder inures to the benefit of the mortgagee, and may be enforced by him."
The cases about to be cited all recognize and apply the rule that the mortgage in such a case, by virtue of the equitable principle of subrogation, can recover of the vendee of the mortgagor, or his successors, who have assumed like obligations to their vendors, an amount sufficient to discharge the encumbrance. Biddle v. Pugh, 59 N.J. Eq. 480;Wager v. Link, 134 N.Y. 122; Fisher v. White, 94 Va. 233;Hospital of St. Barnabas, 27 N.J. Eq., 650; Miller v. Thompson,34 Mich. 10; Osborne v. Cabell, 77 Va. 462; Hopkins v. Warner, 109 Cal. 136;Crowell v. Currier, 28 N.J. Eq., 152; Stover v. Thompkins, 51 N.W. (Neb.), 1040. This action was not brought by the mortgagee who held the encumbrance on the land, but his assignee of the notes secured thereby. But this should make no difference in the result, as it is familiar doctrine that the assignee of a note secured by a mortgage is entitled to the full benefit of the mortgage. Jones v. Ashford,79 N.C. 172; Hyman v. Devereux, 63 N.C. 624. It may not be amiss to add that when the complaint in the case of Woodcock v. Bostic was amended in the court below so as to set up the equity of subrogation, and the case, after a trial there, was again brought to this Court, it affirmed a judgment in favor of the plaintiff. The notes secured (596) by the mortgage were, in that case, as it appears, assigned to the plaintiff. So that the case is a direct decision on the question as to the first grantee, and the doctrine has, by the great weight of authority, as we have seen, been extended to subsequent grantees. We believe that this decision, apart from the direct authorities sustaining its basic principle, which is greatly favored by the law, is a fair and just interpretation of the meaning and intention of the parties and is the *Page 479 
proper deduction to be made from the form and nature of the several transactions. The equity of subrogation springs naturally out of the two other equities, contribution and exoneration, and is, in fact, one of the means by which those equities are enforced. It is eminently calculated to do exact justice between persons who are bound for the performance of the same duty and obligation, and is one, therefore, which is much encouraged and protected. It was called into existence for the purpose of enabling a party secondarily liable to reap the benefit of any securities or remedies which the creditor may hold as against the principal debtor, and by the use of which the party paying may thus be made whole. It may be used to enforce the equity of exoneration as against the principal debtor, or of contribution as against others who are in the same rank. Bispham on Equity (6 Ed.), sec. 335. The doctrine is far-reaching and has been so extended that a person standing in the relation of a surety reaps its benefit and is thereby entitled to have all of the principal's means of indemnity, including the privilege of substitution to the principal's or debtor's claim to indemnity or repayment from others, including all remedies and secureties held by him. Sheldon on Subrogation, sec. 100; Hobson v. Bass, L. R. 6 Ch., 792; Rodenbarger v. Bramblett, 78 Ind. 213. If one surety takes a security from the principal for his own indemnity, it will inure to the benefit of all the sureties by the operation of this rule, because equality is equity. Bispham on Equity (6 Ed.), sec. 337, p. 454. We hold, therefore, that the court has incorrectly applied the law to the facts of this case.
It will not be contended that when the grantees accepted the several deeds they did not each become bound by its covenants, the same as if they had jointly executed them with the grantors, and even though they were deeds poll and not deeds indented. 20 A. E. Enc. (597) (2 Ed.), 990; King v. Whitley, 10 Paige (N. Y.), 467, andHenry v. Heggie, ante, 523.
Before closing this opinion, we must acknowledge our indebtedness to Mr. Taliaferro for his learned brief and able argument. His research has greatly enlightened us and facilitated our investigation of the subject.
Error.
Cited: Publishing Co. v. Barber, 165 N.C. 495; Bryan v. Canady,169 N.C. 583; Warren v. Herrington, 171 N.C. 167. *Page 480