W. W. PARLIER v. J. J. MILLER and W. W. MILLER, Administrators
of E. B. MILLER, Deceased.

(Filed 21 November, 1923.)

**1. Contracts—Parol—Statute of Frauds—Promise to Pay Debt of Another—Mortgages—Deeds and Conveyances—Consideration.**

A purchaser of land received his deed therefor and gave back a mortgage, which was registered, for the balance of the purchase price secured by his notes under seal, and thereafter conveyed his equity to a third person in consideration of a certain cash payment and his grantee's parol promise to pay off the mortgage debt: *Held*, the parol agreement for the payment of the mortgage debt was not a promise to pay the debt of another required by the statute of frauds to be in writing (C. S., sec. 987), and is valid and enforceable as a direct obligation of his grantee supported by a sufficient consideration.

**2. Same—Parties—Privies—Actions.**

Where the grantee of the mortgagor has agreed as a part of the purchase price of lands to assume the payment of a mortgage thereon, the mortgagee, as the one for whose benefit the contract was made, though not strictly a privy thereto, may maintain his action thereon, both against his mortgagor and the grantee in the latter's deed.

**3. Same—Notes Under Seal—Limitation of Actions.**

Where the grantee of a mortgagor of lands has assumed, under a valid agreement, to discharge the mortgage debt, evidenced by notes under seal, the ten-year statute of limitations applies. C. S., sec. 437.

**4. Evidence—Motions—Nonsuit.**

Upon a motion to nonsuit plaintiff, the evidence will be considered in the light most favorable to him.

APPEAL by plaintiff from *Lane, J.,* at July Term, 1923, of ASHE.

Civil action. The essential facts in the case are that on 11 October, 1910, W. W. Parlier, the plaintiff, and his wife, Ida Parlier, executed and delivered to one J. F. Brown and wife, Julia Brown, a deed in fee simple to a tract of land containing about 45 acres in Watauga and Avery counties, and the deed was recorded. That to secure the balance of the purchase-money on the land, J. F. Brown made a mortgage of even date on the land to W. W. Parlier, the plaintiff, for $300, evidenced by three bonds under seal dated 11 October, 1910, of $100 each, due on 11 October, 1911, 11 October, 1912, and 11 October, 1913. The mortgage was duly recorded. That no part of the bonds have been paid. That thereafter, in the fall of 1911, J. F. Brown and wife sold the land deeded to them by plaintiff and his wife to E. B. Miller and made a deed to him for the land. That E. B. Miller is dead and the defendants are his administrators. That at the time Miller purchased the land from Brown, the Parlier mortgage was duly recorded in

Watauga and Avery counties, where the land was situate. That at the time Miller purchased the land from Brown and the deed was made, the following agreement took place between them in regard to the Parlier bonds and mortgage, as testified to by the following witnesses for plaintiff:

S. S. Revis testified: "I knew E. B. Miller and know W. W. Parlier. I had a conversation with E. B. Miller with reference to notes executed by J. F. Brown to W. W. Parlier for lands in Watauga County and Avery County. I have no interest in this suit. E. B. Miller, in this conversation, told me that he was to pay what was behind to Mr. Parlier or would sell to Parlier; that he did not know what he would do, but would do one or the other. E. B. Miller told me what Brown sold the land to him at and what the stock was worth and what was behind, and that he had to sell out to Parlier at what it cost him or he would have to pay the Brown notes to Parlier. Said he was to pay Mr. Parlier what Mr. Brown owed on the land. Miller told me he got the land for the consideration that he was to pay Mr. Brown $100 and pay the notes of $300 that Brown owed Parlier.

"The conversation I had with E. B. Miller was in the late fall of 1911. About two or three years after this, E. B. Miller told me that he had never done anything about settling with Parlier, and said he wanted to sell out to Parlier, if he could."

Mrs. Julia Brown testified: "I am the wife of J. F. Brown, and I was present when my husband sold the land to E. B. Miller, the Parlier land. We executed a deed to E. B. Miller for the land, and at the time the deed was made, my husband told Mr. Miller that he owed Mr. Parlier and had executed and delivered three notes of $100 each to Mr. Parlier and that they had not been paid, and told him about the mortgage to Mr. Parlier, and Mr. Miller said he would take them on his own risk and pay whatever there would be to pay on them—that is just what he said.

"E. B. Miller agreed with my husband to pay the notes he had given to W. W. Parlier, but I cannot tell you just when it was—about a year or so after Mr. Brown gave the notes."

The suit was started 1 December, 1919. The deed from Parlier and wife was made to Brown and wife. Brown alone signed the mortgage to plaintiff, but as Brown and wife signed the deed to Miller, this fact is not material.

At the conclusion of all the evidence, the defendants made a motion to nonsuit. The court below allowed the motion, and plaintiff excepted and appealed to this Court, and assigned as error the court's granting the nonsuit and signing judgment of nonsuit.

PARLIER *v.* MILLER.

*Chas. B. Spicer and Park & Johnston for plaintiff.*
*F. A. Linney and T. E. Bingham for defendants.*

CLARKSON, J.  We think the court below erred in granting defendants' motion to nonsuit.

The promise made by E. B. Miller (defendants' intestate) to J. F. Brown to pay W. W. Parlier the notes of $300 that Brown owed Parlier under the facts in the case, if true, was a binding contract, founded on a valuable consideration and enforceable.  J. F. Brown owed W. W. Parlier $300 and interest, balance of purchase-money of land that was deeded to himself and wife by Parlier and wife.  He gave Parlier a mortgage on the land to secure the $300—three bonds of $100 each. When J. F. Brown and his wife conveyed the land to E. B. Miller, if the evidence is true, Brown told him what was due on the land, and as part of the consideration, or purchase price of the land, Miller agreed to pay the $300 bonds and mortgage on the land that was owing to Parlier.  From the evidence, E. B. Miller received a deed for the land and promised to pay the debt on it.

"An assignee of a note secured by a mortgage is entitled to the full benefit of the mortgage; and where the mortgagor has conveyed the mortgaged land, subject to the payment of the mortgage debt, and it has successively been conveyed to several grantees, one to the other, each assuming in his deed the payment of said debt, a holder for value of the note thus secured, under the equitable doctrine of subrogation, has a right of action, not only against the mortgagor of the lands for whatever balance on the note the foreclosure fails to satisfy, but also against the several grantees of the land, who successively and from each other assumed the indebtedness secured by the mortgage, and evidenced by the note sued on."  *Baber v. Hanie,* 163 N. C., 588.  The assumption of the debt need not be in writing.

The matter is fully discussed and the principle above set forth sustained by *Walker, J.,* in *Rector v. Lyda,* 180 N. C., 577.  The same learned Judge wrote the *Baber case, supra.*  See *Woodcock v. Bostic,* 118 N. C., 822; *Way v. Transportation and Storage Co., ante,* 224.

We deduce from the authorities that it is well settled that where a contract between two parties is made for the benefit of a third, the latter may sue thereon and recover, although not strictly a privy to the contract.

It is well settled that a direct action will lie against the promissor when the promise to pay the debt of another arises out of some new and original consideration of benefit or harm, moving between the principal contracting parties.

The defendants filed no brief and did not argue the case in this Court. In the answer the learned counsel. for the defendants, among other defenses, relied on the statute of frauds and the three-year statute of limitations. The statute of frauds, which is as follows, does not apply to the facts in this case:

"No action shall be brought whereby to charge an executor, administrator or collector upon a special promise to answer damages out of his own estate or to charge any defendant upon a special promise to answer the debt, default or miscarriage of another person, unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party charged therewith or some other person thereunto by him lawfully authorized." C. S., sec. 987, well known as 29 Charles II.

The three-year statute of limitations does not apply. The promise was to pay the bonds, which were under seal, and ten years had not expired when this action was commenced. C. S., 437, says: "Within ten years an action . . . upon a sealed instrument against the principal thereto."

Professor Minor, in his great treatise on Real Property, says: "If the assignee (of the land) does thus assume payment of the mortgage debt, he thereby becomes the principal debtor, and the original mortgagor is only liable subsidiarily as a surety. And while the mortgagee may continue to hold the mortgagor personally liable upon his contract to pay the debt, notwithstanding the assumption of the mortgage by the purchaser of the land, he may also, it seems, hold the purchaser directly responsible, though he is not a party to the agreement between the mortgagor and the purchaser—a right based sometimes upon the principle that one may sue upon a contract to which he is not a party, if it be made for his benefit, and sometimes upon the theory of the subrogation of the mortgagee to the rights of the mortgagor (the surety) against the purchaser (the principal debtor)." 1 Minor on Real Property, sec. 647. *Baber v. Hanie, supra.*

These are the only defenses that can now be considered in the record on the motion of the judgment for nonsuit, which is always to be taken in a light most favorable to plaintiff. Upon a new trial there may be other defenses.

For the reason stated, there was error.

Reversed.