A. D. WADFORD, GUARDIAN, v. W. P. GILLETTE, TRUSTEE, ET AL.

(Filed 23 March, 1927.)

**1. Appeal and Error—Reference—Evidence—Review—Presumptions.**

The facts found by the referee upon sufficient legal evidence, approved by the trial judge, are not reviewable by the Supreme Court on appeal, and where the evidence is not set out in the record, the findings by the trial judge are presumed to be sustained by sufficient evidence.

**2. Contracts—Insane Persons — Adjudication of Insanity — Void Contracts.**

Contracts made with one after she has been officially adjudged to be insane and lacking in mental capacity to execute them are void, and voidable only when made before such official determination.

**3. Same—Voidable Contracts — Restitution of Consideration — Status Quo—Equity.**

One dealing with a person knowing her to be insane, or of insufficient mental capacity to make a contract, is deemed to have perpetrated a fraud upon her and her rights; but where the person thus dealing with her does so in good faith without notice of her mental incapacity, and pays a valuable consideration which cannot be restored or the parties cannot be put in *statu quo*, the contract so executed is valid and enforceable.

**4. Same—Burden of Proof—Knowledge—Restitution—Consideration.**

Where the mental incapacity or insanity of the party to a contract sued on has been shown in evidence in an action thereon, the burden is on the party claiming thereunder to show, when relied on, that he was ignorant of the fact of such incapacity, and without notice of such facts as would put a reasonably prudent man upon inquiry; that the transaction was fair and no advantage was taken, and that restitution of the consideration or adequate compensation could not be made.

**5. Contracts—Insane Persons—Mental Incapacity—Husband and Wife —Consideration—Equity—Estate by Entireties.**

Where the insanity or mental incapacity of a married woman is set up in a suit to declare a mortgage void executed by her and her husband on her separate lands, the fact that in the course of the transaction she had acquired an estate to lands in entireties with her husband, had lived thereon for years enjoying with him the profits thereof, and that her separate lands had been appreciably relieved of certain mortgage liens, is sufficient consideration to be considered by a court of equity upon the doctrine of restitution in placing the parties in *statu quo.*

**6. Mortgages—Deeds and Conveyances—Assumption of Mortgage Debt —Principal and Surety.**

Where lands are encumbered with a mortgage and the mortgagor conveys ·them to a third person who assumes the outstanding mortgage as between the mortgagor and the purchaser, the mortgagor occupies the place of surety against whom the mortgagee may proceed to collect the deficiency of the price the land had brought at the. foreclosure sale.

**7. Contracts—Insane Persons—Bills and Notes—Negotiable Instruments —Due Course.**

The same principles that control contracts of insane persons apply to negotiable instruments in the hands of an innocent holder in due course for value.   C. S., 3033.

**8. Reference—Appeal and Error—Referee's Report — Interpretation— Findings of Fact—Conclusions of Law.**

Whether an item of the report of a referee is a finding of fact or conclusion of law may be determined by the Supreme Court on appeal from an interpretation of his report set out in the record.

CIVIL ACTION, before *Barnhill, J.,* at November Term, 1926, of NASH.

The action was instituted by A. D. Wadford, guardian of Rachael Frances Baker, v. W. P. Gillette, trustee in the deed of trust, which was the subject of controversy, and James T. Gillette, payee in the note in controversy, and State Bank of Portsmouth, Va., the holder of said note.

The cause was by consent of counsel referred to H. G. Connor as referee to find the facts and state the conclusions of law.   After hearing the evidence and argument of counsel the referee made his report.   The findings of fact by the referee are voluminous, but are clear.and succinct,

presenting every phase of the controversy, and for that reason the entire report is set out in full and is as follows:

1. That prior to 1 January, 1921, Rachael Frances Baker, the wife of J. W. Baker, was the owner in fee simple and in the possession of a certain tract of land lying and being in Nash County, North Carolina, North Whitaker's Township, and being lot No. 3 of the J. D. Wadford Farm, the said Rachael Frances Baker having inherited said farm from her father, D. J. Wadford, the said Rachael Frances Baker having married John W. Baker, and on said date was living upon said farm with her husband.

2. That prior to 1 January, 1921, P. Roy Ricks owned and was in the possession of a certain tract of land in Southampton County, Virginia, Drewryville Magisterial District, containing 217¼ acres, more or less.

3. That on 1 January, 1921, the following liens existed as valid, subsisting liens against the 217¼ acres of land, in Southampton County, Virginia, owned by P. Roy Ricks, in the following order:

(a) An indebtedness due the Federal Land Bank, of Baltimore, Md., of $3,800, dated 5 June, 1919, recorded in the office of the clerk of the Circuit Court of Southampton County, Virginia, in Mortgage Book 19, p. 256.

(b) A deed of trust securing an indebtedness to James T. Gillette, guardian, of $6,000, dated 9 June, 1919, and recorded in Deed of Trust Book No. 19, page 253.

(c) A deed of trust securing an indebtedness of J. H. Leigh for $1,200, dated 9 June, 1919, and recorded in Deed of Trust Book No. 19, p. 253.

4. That James T. Gillette, guardian, had as additional security for the $6,000 above mentioned a mortgage or deed of trust upon two other tracts of land in said State, county and magisterial district, being lots Nos. 8 and 9 of the C. P. Grizzard Home Place, containing 87 and 74 acres, respectively, the said mortgage or deed of trust having been given by D. C. Ricks and was duly recorded, the said D. C. Ricks being a brother of P. Roy Ricks.

5. That certain negotiations had been between Joshua Leigh and P. Roy Ricks, resulting in the giving of an option by P. Roy Ricks to the said Leigh for the said 217¼ acres of land.

6. That some time during the year 1920, J. W. Baker, the husband of Rachael Frances Baker, went to Southampton County, Virginia, and took from Joshua Leigh an option upon the Ricks place, upon the following terms: he paid $500 at the time of the taking of the option; was to pay $4,500 additional, making $5,000 in all, by 1 December, 1920, and was to assume the indebtedness of $11,000 upon the place.

7. This option was closed in the office of J. T. Gillette, who was an attorney, the $500 was paid and went into the hands of J. T. Gillette,

who credited the same upon the interest due him as guardian, on the $6,000 note which he held against P. Roy Ricks.

8. That in the fall of 1920 John W. Baker failed to take up the option and pay the $4,500, and forfeited the $500 previously paid.

9. Upon the failure of John W. Baker to take up the option, Joshua Leigh had no further interest in the matter.

10. When J. T. Gillette ascertained that John W. Baker had failed to take up the option, he came to North Carolina to see and did see John W. Baker and his wife, this visit being made at the instance of P. Roy Ricks and D. C. Ricks.

11. In consequence of this visit, J. T. Gillette arranged with the First National Bank of Portsmouth, Virginia, for a loan of $3,500 for John W. Baker, which was to be arranged as follows: John W. Baker and wife, Rachael Frances Baker, were to give a deed of trust upon Mrs. Baker's land in North Carolina, securing a note of $3,500; J. T. Gillette was to endorse this note as collateral to his note to the bank.

12. The price of the land was abated to $15,000. By the arrangement above set out, $4,000 was to be paid in cash, made up by the $3,500 loan and the $500 which had been previously paid and John W. Baker was to assume the mortgage indebtedness on the P. Roy Ricks land in Southampton County, Virginia.

13. In consequence of these negotiations, J. T. Gillette came to the home of John W. Baker and his wife and prepared a deed of trust to W. P. Gillette, Jr., securing a note for $3,750, payable to Jas. T. Gillette. John W. Baker and his wife, Rachael Frances Baker, signed the deed of trust and the note. J. T. Gillette returned to Virginia, and in about ten days the deed of trust and note were sent him, the probate having been taken by T. E. Powell, a justice of the peace of Nash County, now dead; the deed of trust was on 21 January, 1921, recorded in Book 219, page 317, in the office of the register of deeds of Nash County. The note was taken for $3,750, $3,500 to be used in the purchase of the Ricks land and $250 was Gillette's fee for negotiating and financing the deal.

14. Pursuant to arrangements which had been made, Jas. T. Gillette endorsed the $3,750 note of Rachael Frances Baker and her husband, John W. Baker, attached it to his note of $3,500, and sent it to Portsmouth, Virginia, and the defendant, State Bank of Portsmouth, discounted Gillette's note for $3,500 and came into the possession of the $3,750 Baker note only a few days after the note was given, and long prior to its due date.

15. The proceeds of the $3,500 note given by Jas. T. Gillette, with the $3,750 note as collateral thereto, was used by him as a payment upon the $6,000 note held by him as guardian.

16. Thereupon, P. Roy Ricks and wife executed and delivered unto John W. Baker and wife, Rachael Frances Baker, a deed of conveyance, conveying unto them as "joint owners" the 217¼ acres of land in Southampton County, Virginia, subject to the three encumbrances or liens hereinbefore set out in Finding of Fact No. 3, amounting to $11,000, the said deed was duly recorded in Deed Book 68, page 540, in the clerk's office of the Circuit Court of Southampton County, Virginia; and John W. Baker and wife, Rachael Frances Baker, moved from North Carolina to Virginia and upon said lands, and lived there for several years.

17. James T. Gillette had agreed with D. C. Ricks and P. Roy Ricks that upon the payment of the sum of $4,000, lots Nos. 8 and 9 of the C. P. Grizzard Home Place, which had been mortgaged to secure his note as guardian for $6,000 would be released, and thereupon, on 30 April, 1921, James T. Gillette as trustee and as guardian, executed and delivered unto D. C. Ricks a deed of release by which lots Nos. 8 and 9 of the C. P. Grizzard Home Place were released from the deed of trust securing the $6,000 note, the said release having been duly recorded in Release Deed Book No. 1, page 524.

18. There is no evidence as to whether or not John W. Baker and wife, Rachael Frances Baker, were cognizant of or knew anything about the agreement between James T. Gillette and D. C. Ricks as to the release by Gillette of lots Nos. 8 and 9 of the Grizzard Farm and the referee, therefore, is unable to find as a fact that John W. Baker and Rachael Frances Baker were cognizant of the agreement to and the subsequent release of these two tracts of land, and the referee finds that Rachael Frances Baker was not cognizant of the agreement.

19. There is no evidence as to the value of lots Nos. 8 and 9 of the Grizzard Home Place, the referee, therefore, is unable to find what these two tracts of land were worth at the time of the execution of the release above mentioned.

20. John W. Baker defaulted in the payment of the interest and taxes upon the lands in Southampton County, Virginia, and James T. Gillette in order to protect himself, was compelled to pay the interest and taxes as they accrued, with the exception of $268.72, which was paid to him by John W. Baker.

21. James T. Gillette was compelled to and did pay to the sheriff of Nash County $182.75 on 8 February, 1924, being the taxes upon the Baker land in Nash County.

22. Baker having defaulted, the lands in Southampton County, Virginia, were finally sold by the Federal Land Bank of Baltimore, and bid in by one Peter Thomas for $7,000, Thomas now being in possession thereof. The evidence is that this purchase has not yet been consummated.

23. That on the day that Rachael Frances Baker executed the note of $3,750 and the deed of trust to W. P. Gillette, Jr., securing the same, and for some time prior thereto, she was mentally incapable of entering into a contract so as to bind her separate estate.

24. That neither James T. Gillette nor W. P. Gillette, Jr., knew of the mental incapacity of Rachael Frances Baker on the date that she executed the note and mortgage.

25. That the State Bank of Portsmouth, Va., had no knowledge of the want of capacity of Rachael Frances Baker at the time she executed the note of $3,750, and the deed of trust securing the same; that it took the said note as collateral to the $3,500 note of James T. Gillette in the following circumstances:

1. The instrument was complete and regular upon its face.

2. The bank became the holder of it before it was overdue and without notice of previous dishonor.

3. The bank took it for good faith and value.

4. That at the time the bank took the note it had no notice of any infirmities in the instrument or defect in the title of the person negotiating it.

26. That when James T. Gillette took the note of $3,750, and the deed of trust securing the same, he had no intention of driving an unconscionable bargain with Rachael Frances Baker or her husband, John W. Baker, and did not attempt to take advantage of either one of them.

27. There is no evidence before the referee as to the value of the 217¼ acres of land in Southampton County, Virginia, at the time of the conveyance of the same to John W. Baker and wife, Rachael Frances Baker by P. Roy Ricks, and the referee therefore is unable to find as a fact what was the value of the land at that time and makes no finding with reference thereto, there being no evidence before him from which he can make any finding.

28. Upon admissions made before the referee, the referee finds that Rachael Frances Baker owns no property other than her interest in the farm in Nash County, being lot No. 3 of the J. D. Wadford land, and that her husband, John W. Baker, owns no property whatsoever.

29. That some time between the date upon which the note for $3,750 and the deed of trust securing the same were given, and the institution of this action, Rachael Frances Baker was duly adjudged incompetent by the Superior Court of Nash County, a court having jurisdiction, and the plaintiff, A. D. Wadford, has been duly appointed guardian of her estate and has qualified as such, and in such capacity has instituted this action.

30. Rachael Frances Baker has received no such valuable consideration for the $3,750 note signed by her and her husband and the deed of

trust securing the same as is necessary to bind the estate of a person *non compos mentis,* and no property of any appreciable value has ever passed to her or been paid to her estate in exchange for the said note. The deed from P. Roy Ricks and wife for the 217¼ acres of land created an estate by the entireties on John W. Baker and his wife, Rachael Frances Baker, and was subject to encumbrance amounting to $11,000; whatever interest Rachael Frances Baker may have acquired in this land was of small money value and in no wise equal to $3,750, as she was not a party to, knew nothing of and received no benefits from the release given by J. T. Gillette as trustee and guardian, to D. C. Ricks for lots Nos. 8 and 9 of the C. P. Grizzard home place, her rights and interests are in no wise affected by such release.

From the foregoing findings of fact the referee arrives at the following conclusions of law:

1. That the bringing of this action by A. D. Wadford, guardian of Rachael Frances Baker, is a repudiation by him for her of the note for $3,750 to J. T. Gillette, and the deed of trust conveying her lands in Nash County, North Carolina, being lot No. 3 of the J. D. Wadford land, to W. P. Gillette, Jr., securing said note.

2. That the paper-writing in the form of a note in the sum of $3,750, signed by John W. Baker and wife, Rachael Frances Baker, and the paper-writing in the form of a deed of trust to W. P. Gillette, Jr., securing said note, in so far as they affect the property of Rachael Frances Baker, should be canceled.

3. The rights of the holder of the note to proceed against John W. Baker cannot be passed upon, as he is not a party to this action.

4. As the payment by J. T. Gillette of $182.75 on 8 February, 1924, to the sheriff of Nash County, North Carolina, for taxes then due upon the lands of Rachael Frances Baker in Nash County, being lot No. 3 of the J. D. Wadford land inured to the benefit of the said Rachael Frances Baker, J. T. Gillette is entitled to recover from A. D. Wadford, guardian of Rachael Frances Baker, the sum of $182.75, with interest from 8 February, 1924."

From the foregoing judgment the defendants appeal:

The defendants agreed to waive $250 of said indebtedness, so that the amount now in controversy is $3,500.

*E. B. Grantham and Finch & Vaughan for plaintiff.*
*Spruill & Spruill and Cooley & Bone for defendant.*

BROGDEN, J. Two questions of law are presented for determination:

1. What is the legal status of a negotiable note executed by an insane person and secured by deed of trust upon the property of such person, when the payee in the note and the trustee in the deed of trust had no

knowledge of the mental incapacity of the maker of said note or of the grantor in said deed of trust, and when the entire transaction was in good faith and free from fraud?

2. Is such a note enforceable by a holder in due course?

The evidence supporting the findings of fact by the referee is not included in the record, but the trial judge approved the findings of fact and conclusions of law contained in the referee's report. Therefore, the findings of fact are not reviewable in this Court if there was evidence to support them, and as the evidence is not included in the case on appeal, it must be presumed that the evidence supported the findings. *Miller v. Groome,* 109 N. C., 148; *Thompson v. Smith,* 156 N. C., 345; *Dumas v. Morrison,* 175 N. C., 431; *Caldwell v. Robinson,* 179 N. C., 518; *Hardy v. Thornton,* 192 N. C., 296.

The principle of law governing contracts of insane persons may be stated substantially as follows:

1. The contract of a person not judicially declared to be insane is voidable and not void. If the insanity has been formally adjudicated, subsequent contracts made by such person are void.

2. A party dealing with an insane person, knowing his mental condition, is deemed to perpetrate a fraud upon such insane person, and upon his rights.

3. When a contract with an insane person is executed and completed, and is fair and made in good faith, without notice of mental incapacity, and the parties cannot again be put *in statu quo,* such contract is valid and enforceable.

4. However, when mental incapacity is shown, the burden is so far shifted that the agreement will be set aside unless the party claiming under the contract, by proper proof, establishes the fact that he was ignorant of the mental incapacity, and had no notice thereof which would put a reasonably prudent person upon inquiry, and that no unfair advantage was taken, and that the insane person is not able to restore the consideration or to make adequate compensation therefor. *Carr v. Holliday,* 21 N. C., 344; *Odom v. Riddick,* 104 N. C., 515; *Creekmore v. Baxter,* 121 N. C., 31; *Sprinkle v. Wellborn,* 140 N. C., 163; *Beeson v. Smith,* 149 N. C., 142; *West v. R. R.,* 151 N. C., 231; *Godwin v. Parker,* 152 N. C., 672; *Ipock v. R. R,* 158 N. C., 445; *Craddock v. Brinkley,* 177 N. C., 125.

The referee, in his 30th finding of fact, declared that "Rachael Frances Baker has received no such valuable consideration for the $3,750 note signed by her and her husband and the deed of trust securing the same as is necessary to bind the estate of a person *non compos mentis,* and no property of any appreciable value has ever passed to her, or been paid to her estate in exchange for the said note."

If this statement of the referee should be construed as a finding of fact, exclusively, then it would be necessary to affirm the judgment as such finding has been approved by the judge, and is therefore not reviewable; but as all the facts are set out in the referee's report, this finding, upon fair construction, would seem to be a conclusion of law. So that it becomes necessary to ascertain whether or not, under the facts as found by the referee, Rachael Frances Baker actually received a fair consideration for the note executed by her and secured by deed of trust upon her property in Nash County.

What, then, was the consideration that Rachael Frances Baker received from the transaction? In the first place, she received an estate by entirety under and by virtue of the deed for the Virginia land, executed by P. Roy Ricks and wife. She and her husband moved upon this land and lived thereupon for several years, enjoying the rents and profits of the land. The brief for plaintiff states: "It will be noted the deed to the Ricks land in Virginia was made to J. W. Baker and his wife, plaintiff's ward, as tenants by entireties, but only for a remainder interest, said deed reciting on its face that said land was subject to a first, second, and third mortgage, and attempted to bind grantees to pay off said three mortgages as a part of the considerations for said conveyance." Hence it appears that the deed to plaintiffs provided that the plaintiffs, as grantees therein, should assume and pay off the outstanding mortgage indebtedness existing on the Virginia farm. Included in this outstanding indebtedness was a note of $6,000, payable to the defendant James T. Gillette, guardian, and secured by deed of trust on said property. The proceeds of the note made by John W. Baker and his wife, Rachael Frances Baker, and secured by a deed of trust on her land in Nash County, was applied to this $6,000 lien. Rachael Frances Baker therefore received the full consideration for this credit for the reason that, having assumed the indebtedness on the Virginia farm in the event of a sale of such farm at a sum less than the outstanding liens, then John W. Baker and Rachael Frances Baker would have been liable for the deficiency and the reduction of the $6,000 liability by applying the $3,500 diminished to that extent, the contingent liability of Rachael Frances Baker. The rule of law applicable is thus stated in *Baber v. Hanie,* 163 N. C., 591, as follows: "The doctrine of equity is that when the grantee in a deed assumes the payment of the mortgage debt, he is to be regarded as the principal debtor, and the mortgagor occupies the position of a surety, as between themselves, and the mortgagee is permitted to resort to the grantee to recover the deficiency after applying the proceeds of a sale of the mortgaged premises, by the equitable rule that the creditor is entitled to the benefit of all the collateral securities which his debtor has obtained to reinforce the prin-

cipal obligation, though this right is strictly an equitable one, and its exercise at law has been refused." Jones on Mortgages, 7 ed., vol. 3, sec. 1713; *Bank v. Watson,* 187 N. C., 107; *Parlier v. Miller,* 186 N. C., 501.

We are therefore of the opinion that Rachael Frances Baker received such consideration for the note in controversy as the law contemplates in order to constitute an enforceable contract.

The referee finds that neither John W. Baker nor Rachael Frances Baker has any property except the Nash County property of Rachael Frances Baker. It is therefore apparent that Rachael Frances Baker cannot restore the consideration or place the defendants *in statu quo.* Hence, upon the entire record, it appears that Rachael Frances Baker received full consideration for the note in controversy; that she cannot restore the consideration or place the parties *in statu quo;* that the contract was fully executed, and that there was an entire lack of knowledge of her mental condition or of such facts as to put a reasonably prudent person upon inquiry. Moreover, it appears that there was no fraud or unfair advantage, but the whole transaction was begun and completed in good faith and in full accord with the principles of fair dealing.

The referee finds that the defendant, State Bank of Portsmouth, Virginia, took the note of Rachael Frances Baker as collateral to the $3,500 note of the defendant James T. Gillette under such conditions as to constitute said bank a holder in due course. C. S., 3033.

The same principles that control contracts of insane persons apply to negotiable instruments. *Bank v. Moore,* 78 Pa. St., 407, cited with approval in *Odom v. Riddick,* 104 N. C., 522; *Hostler v. Beard,* 54 Ohio St., 398, cited with approval in *Ipock v. R. R.,* 158 N. C., 449.

For the reasons given, the judgment is
Reversed.